## WASHAKIE LIVESTOCK COMPANY v. BOB MEIGH et al.

(No. 1840; June 19, 1934; 33 Pac. (2d) 922.)

For the plaintiff and appellant, there was a brief by *C. H. Harkins* and *D. J. Harkins* of Worland, and *H. S. Harnsberger* of Lander, and oral argument by *Mr. Harkins.*

For the defendants and respondents, there was a brief by R. H. Nichols and Wm. B. Cobb of Casper and oral argument by Mr. Cobb.

RINER, Justice.

This proceeding by direct appeal brings a judgment of the District Court of Fremont County here for review.

On November 29, 1932, the Washakie Livestock Loan Company, a Wyoming corporation, hereinafter usually mentioned as the "plaintiff," and now the appellant in this record, brought an action of replevin in the district court, aforesaid, against Bob Meigh, Meigh Livestock Company, a corporation, Adolph Martinez, Alfred Snyder, Henry Gomez, Moses Apodoca, Harvey Mann, Felix Dezwell, Trinidad Reyes, and Ricardo Montoya, as defendants, now the respondents; claiming possession of certain livestock and personal property under the terms of the mortgage given it by the defendant Bob Meigh, and alleging that the defendants wrongfully detained said property from it. In due course, the property aforesaid, under the several procedural steps in replevin, was turned over to the plaintiff. On December 30th following, the defendants Bob Meigh and Meigh Livestock Company each filed their separate answers in the action, and, on that date, the remaining defendants, Martinez et al., subsequently mentioned herein as the "lien claimants," also filed their counter-claim, cross petition, and joint and several answer to the plaintiff's petition, asserting—to indicate their claim briefly—a lien or liens in the total sum of $4636.29 upon the property aforesaid, on account of herding services performed and expenses incurred by them relative to it, through contracts made by them with the mortgagor of said property, and also demanding $5000 damages for the alleged wrongful taking of the property under the replevin action, together with an attorney's fee of $500. January 7, 1933, Bob Meigh and the Meigh Livestock Company filed a joint answer to this pleading of the lien claimants, admitting all its allegations. There-

after and on January 14, 1933, the plaintiff filed a demurrer to the lien claimants' pleading, challenging it as not stating facts sufficient to entitle the defendants or any of them to the relief demanded, and, also, that the counter-claim pleaded was not of the character specified in section 89-1016, Wyo. Rev. St. 1931.

On January 25, 1933, an order was made by the court which, after reciting that the cause was heard upon the plaintiff's demurrer above described, concludes in the following language:

"IT IS ORDERED that said demurrer be, and the same is hereby overruled. To which ruling of the Court the plaintiff, Washakie Livestock Loan Company, a corporation, excepts and which exception was by the Court allowed.

"Whereupon the plaintiff was given to and including the 30th day of January, A. D. 1933, within which to answer the separate answer, affirmative defense, counter-claim and cross-petition, of the within named defendants.

"Done in open Court this 25th day of January, A. D. 1933."

The order form was dated as indicated, was signed by the presiding district judge, was filed in the office of the clerk on the succeeding day, and on that day, Thursday, January 26, 1933, the 31st day of the term, was entered in the journal of the court. The same day, plaintiff through its counsel, filed in the cause an affidavit for a change of judge, as prescribed in section 89-1101, Wyo. Rev. St. 1931, which, so far as here material, reads:

"Whenever either party to a civil action in any district court of the state shall file an affidavit in the case, stating one or more of the following causes: * * *

"That the person making the affidavit believes that on account of the bias, or prejudice, or interest of the presiding judge he cannot obtain a fair trial;

"In either case the court in term or the judge in vacation shall, within ten days after filing such affi-

davit, make and enter an order  *  *  *  calling on
some other judge of the district court of the state to
preside in the trial of the case as hereinafter pro-
vided."

Section 89-1104, as it bears upon the matter here
involved, provides: "that if a change of judge shall be
desired by either party, the affidavit required by law
and the motion for a change of judge shall be filed not
less than five days before trial."  There was incor-
porated in said affidavit a motion by counsel for an
order of the court, "referring the above entitled mat-
ter to one of the other district judges of the State of
Wyoming for all further and final disposition therein."

On January 30, 1933, the plaintiff filed its answer
to the pleading of the lien claimants.  The following
day an order was made by the court which, after re-
citing that the cause came on to be heard on "this
25th day of January, 1933," upon plaintiff's demurrer
to the aforesaid pleading of the lien claimants, the
representation of the parties by counsel, the fact of
their being heard in the matter, and the due advise-
ment of the court continues as follows:

"IT IS ORDERED that said demurrer be and the
same is hereby overruled.  To which order and ruling
of the Court plaintiff, by and through its counsel,
objects and exception is allowed, and

"IT IS FURTHER ORDERED that this cause be
and the same is hereby set for trial for the 30th
day of January, 1933, at the hour of ten o'clock in the
forenoon or as soon thereafter as the cause can be
heard on said day, and plaintiff is now given to and
until said 30th day of January, 1933, at the hour of
ten o'clock in the forenoon within which to file herein
its Answer to the Separate Answer, Affirmative De-
fense, Counter-Claim and Cross-Petition of said named
defendants, to which the plaintiff objects and excepts
which exception is allowed.

"IT IS FURTHER ORDERED that the order filed
herein on January 26th, 1933, and relating to the

overruling of the plaintiff's demurrer be and the same is hereby vacated and set aside and that this order be and the same is hereby substituted therefor, to which the plaintiff objects and excepts which exception is allowed.

"DONE IN OPEN COURT this 31st day of January, 1933."

The order form was dated as above recited, was signed by the presiding judge, was filed by the clerk that day, and that day, Tuesday, the 33rd day of the term, was entered in the journal of the court.

On January 31, 1933, the court also made another order duly entered on that day on the journal, which, after reciting that the cause was heard upon the plaintiff's affidavit and motion for change of judge, the representation of the parties by counsel, and the fact of their being heard, uses the following language:

"IT IS HEREBY ORDERED that the motion for change of judge filed on the 26th day of January A. D. 1933, and within less than five days of the date of trial heretofore fixed in this cause be and the same is hereby denied and overruled, to which ruling plaintiff and by and through its counsel objects, and its exception is allowed.

"IT IS FURTHER ORDERED that this cause be, and the same is hereby set for trial for the 3rd day of February, 1933, at the hour of ten o'clock in the forenoon, to which setting plaintiff objects, and its exception is allowed."

Still another order relative to the date of trial of the case was made February 1, 1933, by the court which was entered that day, and which reads:

"This cause coming on for hearing and it appearing to the Court that heretofore and on the 31st day of January, 1933, the above entitled cause was set for trial on the 3rd day of February, 1933, at the hour of 10 o'clock A. M. and it now appearing that it will be inconvenient for the Court to try the case on said 3rd day of February, 1933:

"IT IS THEREFORE ORDERED, that the above entitled cause be continued for hearing until the 7th day of February, 1933, at the hour of 10 o'clock A. M."

The final order setting the case for trial was made by the court on February 7, 1933, and was in these words:

"The trial of the above entitled cause is hereby continued to 10:00 o'clock A. M. on February 21, 1933, in the court room at Lander, Fremont County, Wyoming.

"To the making of this order, the plaintiff objects and excepts on the ground that the Honorable E. H. Fourt, judge of said court, is without jurisdiction to make the order, which exception is by the court allowed."

The case was in fact tried by the presiding judge of the ninth judicial district on February 21, 1933.

The contention is made for the plaintiff that Judge Fourt was without power to act in the case, after the filing of the plaintiff's affidavit and motion on January 26, 1933, other than to call some other judge of the district court of the state to sit in his stead.

In Huhn v. Quinn, 21 Wyo. 51, 128 Pac. 514, speaking of the legal effect of the statutory provisions for a change of judge on account of a party's filing an affidavit, as the statute directs, alleging his belief that, on account of the bias and prejudice of the presiding judge, he cannot obtain a fair trial, this court said:

"When the application for change of judge has been made, which includes the filing thereof and calling the attention of the court or judge thereto, the judge becomes thereby divested of authority in the premises, except to act upon the application, grant it if properly made, and call upon some other of the District Judges of the state to preside in the further proceedings and trial of the case. In this case the application would seem to have been granted, but another District Judge

was not called in as the statute requires. The application appearing to have been properly made, the judge was disqualified to further act in the case except as provided in Sections 5142 and 5144, Comp. Stat., supra."

This is still the law of this state.

The orders made by the District Court of Fremont County, which have been hereinabove recited in detail, must be viewed in the light of the decision last cited and certain well established principles governing judicial records, as shown by the following authorities. A wealth of citations to the same effect might be furnished, but those presently to be given are, we think, sufficiently illustrative.

In White v. East Side Mill & Lumber Co., 84 Ore. 224, 161 Pac. 969, the court pointed out that:

"A journal entry is the prescribed memorial of what the court actually did. It must speak the real truth. If the court did not in fact make an order on the earlier date, one cannot be supplied by any subsequent journal entry. Moreover, the authority to make an order *nunc pro tunc* cannot be used to amend or change the order actually made."

Discussing the power of amendment of judicial records vested in courts of general jurisdiction, 7 R. C. L. 1020, § 47, uses this language:

"In the exercise of this power of amendment, the court is not, however, authorized to do more than to make its records correspond to the actual facts, and cannot, under the form of an amendment of its records, correct a judicial error, or make of record an order or judgment that was never in fact given."
To the same effect as the text last cited is 15 C. J. 975-6.

The Supreme Court of Iowa, in Hamill v. Brewing Co., 165 Ia. 266, 143, N. W. 99, has appropriately said:

"The authority of the court to remake a record once entered by the proper officer, and especially where that record is duly attested by the admitted signatures of the officer or officers whose duty it is to make the same, is not unlimited. On the contrary, it is very restricted, and entries *nunc pro tunc* will not be ordered except when it can be done without injustice to either party whose rights are thereby affected. Mitchell v. Overman, 103 U. S. 65 (26 L. Ed. 369)."

In Gardner v. The People, 100 Ill. App. 254, it appeared that on May 2, 1900, on the direction of a judge of the Superior Court of Cook County, Illinois, one Henry A. Gardner was by rule required to show cause why he should not be attached for contempt, in causing to be entered a final decree in the case of Franks v. Bogue, pending in the Circuit Court of said county, in violation of the Superior Court's order. May 11, Gardner answered in response to the rule. May 18, 1900, the judge aforesaid entered an order reading, in part, as follows:

"And now on this day, during the arguments on the rule heretofore entered herein requiring Henry A. Gardner to show cause why he should not be attached for contempt of court for disobeying an order of this court made April 28, 1900, it having come to the knowledge of the court that no order appears of record as having been made on April 28, 1900, enjoining the counsel for the defendants herein from moving for the entry of a decree in the case of Franks v. Bogue, in the Circuit Court of Cook County, and it being within the recollection of the court that on April 28, 1900, there was before him Mr. Pliny B. Smith, counsel for complainants herein, and Mr. Henry L. Stern, representing Mr. Henry A. Gardner, the counsel for the defendants herein, and that said Smith made a motion for an injunction in accordance with the prayer of the bill in this cause * * * that the court, however, had no time to consider the said evidence or to hear arguments on the said motion on that day, and therefore postponed the hearing of said motion until Wednesday, May 2, 1900, and that upon the

suggestion of said counsel for the complainant the court said, 'I order that counsel for the defendants take no action in the case in the Circuit Court until I can hear this motion, and I so order,' and that the court made said statement as a direction to the minute clerk to enter an order correspondingly, and it appearing to the court that the said minute clerk either did not hear the said order or did not understand it to be a direction to him to enter said order, and that by inadvertence the said order has failed to be entered of record, therefore the court orders that the said order be entered by the clerk as follows: On motion of counsel for complainants herein it is ordered that counsel for the defendants herein be enjoined from procuring or causing the entry of a decree in the case of Franks v. Bogue, in the Circuit Court of Cook County, and that the proceedings in that case remain in *statu quo,* until the further order of this court."

June 2, 1900 Gardner was adjudged guilty of contempt, in failing to obey the order of the Superior Court of April 28, 1900. In the course of its opinion reviewing the matter, the appellate court said:

"Courts of record speak only by their records; that is to say, for evidence of what a court of record has done, resort must be had to its record. * * * Courts can, by *nunc pro tunc* orders, supply ommissions in the record of what was actually done in the cause at a former time, and by mistake or neglect of the clerk was not entered in the clerk's minutes or the court's records; but where the court has failed to make an order which it could have made and in fact intended to make, it can not subsequently make the same *nunc pro tunc* so as to make it binding upon the parties to the suit from the date when it was intended to have been so entered. Ex parte Buskirk, 72 Fed. Rep. 14-20-21; Smith v. Hood & Co., 25 Penn. St. 218; McCormick v. Wheeler, 36 Ill. 114; Perkins v. Hayward, 132 Ind. 95; Cleveland Leader Printing Co. v. Green, 52 Ohio St. 487; Gillett v. Union Nat. Bank, 56 Mo. 304; Cox v. Cress, 51 Ark. 224.

"A court can not amend its record to correct judicial error, or remedy the effect of judicial nonaction.

Encyclopedia of Pleadings & Practice, Vol. 17, 912; Forquer v. Forquer, 19 Ill. 68.

"All amendments of judicial action, whether made in or after term, from minutes or memoranda of clerk or court, or from the recollection of the judge, are made with a saving exception, expressed or implied, in favor of the rights of third parties acquired in reliance upon the record made by the clerk, which record imparts absolute verity. McCormick v. Wheeler, 36 Ill. 115; Gray v. Robinson, 90 Ind. 27; Church et al. v. English, 81 Ill. 442.

"As said by the Supreme Court in McCormick v. Wheeler, 36 Ill. 115, 'No doctrine rests upon more stable ground.'

"The record that imparts absolute verity, and upon which all who look may rely, does not reside 'unwritten and unspoken in the breast of the judge.' Nor does it exist in memoranda kept by the court.

"In the present case during the April term of court there did not, nor until the 18th day of May, did there exist, either record of court, memoranda of the judge, or minutes of the clerk that any order had been made April 28th.

"Upon the day last named, upon the recollection of the court, for the first time there appeared on record memoranda or minute, the order for disobedience of which twenty days before (April 28th) appellant was held guilty of contempt."

And the conviction for contempt was reversed. See, also, State v. Turlock, 76 Mont. 549, 248 Pac. 169-173; Woolf v. Deahl, 152 Ill. App. 357; Ruby v. Wolf, 39 Oh. App. 144, 177 N. E. 240.

In the case at bar, looking only to the journal entries, as we must, to discover what action the court below took, it appears that the order of the District Court of Fremont County made January 25, 1933, and entered the following day, was the only order in existence dealing with the case when the plaintiff filed its affidavit for a change of judge. It is evident that

this order simply overruled the plaintiff's demurrer and gave it until and including January 30, 1933, in which to answer the pleading of the lien claimants, and the answer was so filed. There is no intimation in that order that the cause was set for trial on any date at all, even assuming that it was proper, at that stage of the case, over the protest of any of the parties to take action of that nature. There was, then, no obstacle to prevent plaintiff's filing its affidavit aforesaid, the statutory requirement quoted above (sec. 89-1104), that such affidavit should be filed "five days before trial," certainly not being one. On January 31, the court for the first time, by an order stated as "substituted" for that of January 25 preceding, undertook to set the case for trial and fixed a date therefor one day before the order itself was made. This order, if valid, would operate to cut off the rights of the plaintiff under provisions of section 89-1104, supra, assuming, but not deciding, that the excerpted statutory language means five days before the case is set for trial, as suggested by counsel. If, however, its meaning is that the affidavit for change of judge must be filed five days before the trial is commenced, then, of course, it is inapplicable here, for that event did not occur until February 21 following, and, consequently, the additional order made January 31, 1933, denying plaintiff's motion for change of judge, would be erroneous on that ground alone.

It will be noted that the order of January 31, 1933, setting the case for trial on the 30th of that month, does not purport to be a *nunc pro tunc* order. It does not present nearly so strong a situation as the order described above as passed in the Gardner case. It does not find that the order of January 25, 1933, through mistake, inadvertence, carelessness, or oversight of the clerk, failed to set the case for trial.

There is no statement that such an order was, in fact, made on that date. There is no language indicating that the order was made for the important purpose of causing the court's records to speak the exact truth. There is no recital, as in the Gardner case, that the judge himself recalled making such an order, and that a representative of counsel had knowledge thereof. On the contrary, the court evidently adopted the meaning of the aforesaid five day filing limit clause as first above suggested, and in that view, the order is just what it purports to be, viz., an order undertaking to cut off legal rights which had already accrued to plaintiff under a filed affidavit which, at the time, it had a right to file, and upon which, thereafter, it had a right to rely.

It follows from what has been said that all the orders made in the case by Judge Fourt, on January 31, 1933, as well as those entered on the subsequent dates, repeatedly resetting the case for trial, were made by him without power to act in the premises; and that all the proceedings at the trial on February 21, 1933, were before a judicial officer disqualified to sit in the case. The only course left open to us under the law is to direct that the judgment rendered in the cause be reversed, and the cause remanded for a new trial with instructions that another district judge be called in to sit in the case, in accord with the mandate of the statute.

*Reversed.*

KIMBALL, CH. J., and BLUME, J., concur.