George W. LEITNER, Appellant
(Plaintiff below),

v.

A. W. LONABAUGH and E. E. Lonabaugh,
Appellees (Defendants below).

No. 3307.

Supreme Court of Wyoming.

June 9, 1965.

Bruce P. Badley, Sheridan, for appellant.

E. E. Lonabaugh, of Lonabaugh & Lonabaugh, Sheridan, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

This is an appeal by plaintiff George W. Leitner from a judgment denying him recovery, as the obligee, on a bond signed by Emily Louise Ewing (formerly the spouse of plaintiff) as principal and obligor, and which defendants A. W. Lonabaugh, her father, and E. E. Lonabaugh, her brother, signed as sureties. To avoid confusion we hereafter refer to plaintiff as "Leitner" and to his former spouse as "Mrs. Ewing."

The record discloses that Leitner and Mrs. Ewing were divorced on August 22, 1960, by a decree entered in the District Court for Sheridan County, Wyoming.[1] The decree, inter alia, provided that the mother, Mrs. Ewing, was to have custody of their children, Diana, age five, and George, Jr., age four, with rights of visitation in Leitner at reasonable times. It also provided that the mother "shall not remove them from the jurisdiction of the District Court in and for Sheridan County, Wyoming, except with the prior written permission of the Defendant [Leitner] or consent of this Court."

By way of support for the children the decree provided that Leitner "pay unto the Plaintiff [Mrs. Ewing] each and every month, commencing with the month of August, 1960, and on the first day of each month thereafter, the sum of $50.00 for each child until such children become 21

1. Judge G. A. Layman was the presiding judge of such court at the time the divorce action was commenced. However, Leitner (defendant in the divorce case) filed an affidavit disqualifying Judge Layman. Thereupon, pursuant to §§ 1-53 and 1-56, W.S.1957, Judge Layman called in Judge Rodney M. Guthrie to preside at the trial of the case and the decree was signed by Judge Guthrie.

years of age or self-supporting, whichever shall first occur." To guarantee payment thereof and of other financial obligations imposed upon Leitner by the decree, the court impressed a lien upon his share of anticipated delayed payments from the sale of a ranch in Powder River County, Montana.

In the summer of 1961, the mother remarried. Thereafter Leitner filed with the court an application for modification of the custody provisions of the decree alleging, among other things, that Mrs. Ewing was proposing to make her home in Hawaii with her then husband and was threatening to take the children with her. Mrs. Ewing, in response to Leitner's application, admitted that she intended to make her future home in Hawaii and countered with an application for an order of the court granting to her, among other things, the privilege of taking the children with her.

Following this the contesting parties, on August 23, 1961, filed a stipulation with the court settling their differences and agreeing that the court might enter an order modifying the original decree in keeping with the stipulation. The material portions of the stipulation provided that Mrs. Ewing could remove the children from Sheridan, Wyoming, to Hawaii, providing that Leitner be given partial custody for a period of ten weeks each year commencing "one (1) week" after the close of each school year. The school year involved in this litigation ended on June 7, 1963.

The right of partial custody in Leitner was to be subject to the conditions:

"(a) That the Defendant is current in his support payments for said children or either of them in accordance with the original Decree herein.[2]

"(b) That the Defendant pay the transportation costs to and from the residence of the Plaintiff for said chil-

dren each year during said partial custody of Defendant.

"(c) That the Defendant have a proper home or place to keep said children during said periods of partial custody and, at all times of his absence during said periods, have a proper person to watch over and care for said children."

Any permission granted to Mrs. Ewing to take the children to Hawaii was to be subject to the condition:

"(a) That the Plaintiff file with the Clerk of Court a bond in the amount of $500.00 with good and sufficient sureties to be approved by said Court conditioned that Defendant shall be paid said amount if the Plaintiff fails to deliver said children to Defendant in accordance with said modification."

On the day the stipulation was filed it was presented to Judge Layman and Judge Layman, without objection from either Leitner or Mrs. Ewing, proceeded to hear the matter and at the conclusion signed a decree amending the custody provisions of the original decree in the manner agreed upon by the parties and also approved the bond furnished by Mrs. Ewing. The bond in question, signed as stated above, was in the sum of $500 and contained the following:

"The condition of this Bond is that if the bond principal shall and in all things deliver up the minor children of the parties to the obligee in accordance with the Modification of the Divorce Decree entered herein by the District Court of Sheridan County, Wyoming, on the 23rd day of August, 1961, in the above entitled matter and each year during the pendency of said Modification and the minority of said children then this obligation is void; otherwise it shall be and remain in full force and virtue."

Subsequent to the signing of the modification decree Mrs. Ewing changed her

---

2. This was modified to some extent by the decree in that Leitner was to be current "subject to the original Decree therein at the time the Defendant [Leitner] is to obtain custody."

residence from Sheridan County, Wyoming, to the State of Hawaii, taking the children with her. Unfortunately the amicable settlement of the parents' differences with respect to the children failed to materialize as envisioned. We shall not attempt to recount all of the difficulties. However, a critical stage was reached in the summer of 1962. On August 18, 1962, near the close of the period of partial custody, Leitner, rather than returning the children to Hawaii, filed an application to modify the modification decree. By the application Leitner sought to obtain custody of the children. Pursuant to such application Judge Guthrie entered a show cause order directed to Mrs. Ewing. In response Mrs. Ewing moved that the application be dismissed for Leitner's failure to abide by the custody provisions of the original and amended decrees; that he be held in contempt for such failure; and for other relief not here important. On August 28, 1962, Judge Guthrie entered an order holding Leitner to be in contempt of court on the grounds stated by Mrs. Ewing, but permitting him to purge the contempt by prompt return of the children to Hawaii, which was done; requiring him to advance certain expenses to Mrs. Ewing pending hearing of the application; and postponing the hearing until further order of the court.

There were no further developments in the case until April 1, 1963, when Judge Guthrie entered an order reassigning the case to Judge John P. Ilsley, the successor of Judge Layman as the presiding judge of the District Court of Sheridan County, Wyoming. Thereafter, on May 8, 1963, it appears that the question of the validity of the modification decree signed by Judge Layman was brought to the attention of Judge Ilsley in a hearing upon a motion relating to the proceeding to modify said decree. Thereupon Judge Ilsley, after reciting that both parties had agreed and consented that they would be bound by the terms of the stipulation entered into in 1961 and the modification decree entered thereon, ordered that such stipulation be approved and confirmed and that Leitner's application directed at the modification decree would be treated as an application to modify the original decree. However, two days later Leitner moved the court for an order dismissing said application without prejudice, and such an order was entered on June 4, 1963. In this same order special provision was made for the boy, George, Jr. It appears that the boy had been undergoing medical observation which Leitner questioned, and it was ordered that Mrs. Ewing place the boy in Leitner's custody prior to June 10, 1963, for the purpose of having the boy examined by a physician of his choosing.

In the meantime Leitner had arranged for passage of the children from Hawaii to San Francisco, California, on United Air Lines. They were scheduled to leave Hawaii on the morning of June 8, 1963, and Mrs. Ewing was so informed by United Air Lines on June 4, 1963. In this Leitner is shown to have been somewhat premature in asserting his rights to the custody of Diana, as the school year did not end in Hawaii until June 7, 1963. However, Mrs. Ewing made no objection to him on that score. Rather the record reveals that on the day she was informed of the arrangements she called her brother—E. E. Lonabaugh, one of her attorneys—and discussed the matter with him. According to her testimony, the principal objection seemed to be that Leitner was delinquent in his support payment for the first half of June, 1963, in the sum of $50, and medical bills for the children in the sum of $372.87. She so informed her brother and said he advised that as long as such amounts were not paid she "did not legally need to release the children." However, the testimony of the brother is that he told her to send the children.

Apparently not having been advised otherwise, Leitner left Sheridan for San Francisco early on the morning of June 7, 1963, to meet his children, only to find upon arrival that they were not there. An unsuccessful effort was made to call Mrs.

Ewing. Upon returning to Sheridan, Leitner promptly wrote to Mrs. Ewing, imploring her to send the children and saying, "I have kept my agreements up to date and hope you will do the same. I would like an answer as soon as possible as it is now almost the middle of June already." Mrs. Ewing did not answer and the record does not show that Leitner was then informed as to Mrs. Ewing's reasons for refusing to send the children.

Then in the latter part of July 1963 Leitner commenced a habeas corpus proceeding in the Circuit Court of the First Circuit, State of Hawaii, for the purpose of enforcing his rights of custody to the children.

At the beginning of the hearing in the habeas corpus matter the trial court was informed that the parties had agreed that George, Jr., would remain in Hawaii for further medical attention but that the matter should proceed with respect to rights of custody to Diana. Upon completion of the hearing the trial court held that the amended decree rendered by Judge Layman was entitled to full faith and credit; that there had been no material change of circumstances affecting custody since the date of said decree; and that Leitner was entitled to custody of Diana. Judgment was entered accordingly and no appeal seems to have been taken.

Having been put to substantial expense in attempting to get partial custody for the summer of 1963, Leitner commenced the instant action against defendants Lonabaugh to recover on the bond. By their amended answer defendants denied that they were obligated to Leitner on the bond and by way of affirmative defenses alleged (a) that the bond was void because the modification decree upon which it was based was void, and (b) that Leitner was estopped to recover such expenses because of an adverse decision thereon against him in the habeas corpus proceeding.

On the same day that the amended answer was filed, with leave of court, the case came on for trial. The trial court found that one condition of the stipulation entered into on August 21, 1961, was that Leitner "be current in his support and other payments for the children of the parties before he could have partial custody of said children"; that he "had not paid his support payments for the first 14 days of June"; that he "was not delinquent in payment of the medical bills in the amount of $372.87"; and that Judge Ilsley approved the stipulation of August 21, 1961. As conclusions of law the court determined that the order of Judge Ilsley was sufficient to validate the bond here in question; that the condition of the bond was an enforceable obligation; that liability of the sureties was dependent "on certain conditions precedent"; that Leitner failed to perform a condition of said bond "to wit: The payment of support moneys for said children for the first half of June, 1963"; and that because of such failure he was not entitled to recover. Judgment was entered against Leitner and, as stated above, he has appealed.

In their briefs and in oral argument the parties have presented several points, some of which are not germane to the matters before us and others which need not be noted for the reason that a decision upon what we perceive to be the two principal questions presented will adequately dispose of the case.

In somewhat reverse order we take up first the argument of defendants that the judgment was proper, notwithstanding that the court might have erred in other respects, for the reason that the undertaking was to assure performance by Mrs. Ewing of the custody provisions of the modification decree and no lawful decree had been entered. The argument is premised upon the claim that Judge Layman, having been disqualified for the trial of the divorce case, was without authority to render the modification decree. The trial court did not directly pass upon this issue. Rather, as stated above, its conclusion that the bond could be enforced was based upon the order of Judge Ilsley confirming and ratify-

ing the stipulation of the parties. Without indicating our approval or disapproval of the correctness of reaching the conclusion on that basis, we think the sounder approach is to decide the issue of law as to whether or not the modification decree was a valid decree. In passing we might mention that this same issue appears to have been litigated in the habeas corpus proceeding and was determined adversely to the defendants' contentions.

The question really presents two elements: (a) In a divorce case is the presiding judge of the court having jurisdiction of the subject matter and the parties to the action, when disqualified under the statute, forever deprived of authority to adjudicate controversies between the parties in matters of custody occurring subsequent to the time that the divorce decree was entered? and (b) when does the authority of a specially assigned judge called in to try the divorce case terminate?

Under our statute, § 1–53, W.S.1957, disqualification of a presiding judge is accomplished by the filing of an affidavit enumerating certain causes, such as the bias or prejudice of the judge. It then goes on to provide:

> "In either case the court in term or the judge in vacation shall, within ten days after filing such affidavit, make and enter an order * * * calling on some other judge of the district court of the state to preside in the trial of the case * * *."

We have several times held that upon the filing of the affidavit the presiding judge is divested of all authority in the case, except to enter such order. State ex rel. Petro v. District Court of Sheridan County, Wyo., 389 P.2d 921–922; Washakie Livestock Loan Co. v. Meigh, 47 Wyo. 161, 33 P.2d 922, 926; Huhn v. Quinn, 21 Wyo. 51, 128 P. 514, 516–517. In the ordinary case it can readily be seen that after a judgment rendered by the special judge has become final in all respects there would be little occasion for further action to be taken. However, that is not true of a divorce case involving "the care, custody and maintenance" of children or "other allowance for the wife." Sections 20–61 and 20–66, W.S.1957. In such matters, under the statutes, jurisdiction of the court to amend or modify the provisions of the original decree is retained and, as experience has shown, it is a jurisdiction often invoked. And that jurisdiction is an attribute of the court not to be confused with the acts of a disqualified judge.

We recognize, of course, that a proceeding such as here to modify a divorce decree is, because of the statute, filed under the same docket assigned in the original proceeding. But that is not the true test of which judge, the presiding judge or the special judge assigned to try the divorce case, is clothed with authority to adjudicate the issues raised by the complaint for modification. There is sound reason why this is so. In the first instance it is to be observed under our statute that the special judge is called in "to preside at the trial of the case." Ordinarily the word "case" would mean an action regularly commenced as a judicial proceeding wherein adverse parties by their pleadings have tendered certain issues for adjudication. We think that is the sense in which the term was used here. The case is tried when those issues are heard and determined and the trial judge fixes the right of the parties by decree. State ex rel. Stokes v. Second Judicial District Court in and for Washoe County, 55 Nev. 115, 27 P.2d 534, 536. Assuming that the decree is not disturbed by the trial judge on post-motions or on appeal, it would seem to follow logically that when a special judge has rendered such a decree his function and authority in the case are at an end. What is there then that would warrant a different view simply because the decree was entered in a divorce case involving custody of children and to that extent was subject to modification? Nothing that we can find.

Under previous decisions of this court it has always been held that such a decree will not be modified unless there

is a substantial change of circumstances occurring subsequent to the decree. It is not to be done except "for the most cogent reasons." Laughton v. Laughton, 71 Wyo. 506, 259 P.2d 1093, 1097, 43 A.L.R.2d 351. Consequently, a modification proceeding involves new issues framed by facts differing from those existing when the original decree was entered. A new adjudication of the rights of the parties must be made. For all intents and purposes it is a separate and distinct case from the original proceeding. We conclude it should be so treated even though it is properly docketed in the divorce case. Haag v. Haag, 240 Ind. 291, 163 N.E.2d 243, 247; Heller v. Heller, 133 Ind.App. 259, 181 N.E.2d 530, 533.

Other courts have reached the same result in analogous situations. Price v. Featherstone, 64 Idaho 312, 130 P.2d 853, 855, 143 A.L.R. 407; Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323, 329; State ex rel. Stokes v. Second Judicial District Court in and for Washoe County, supra; State ex rel. Mauerman v. Superior Court for Thurston County, 44 Wash.2d 828, 271 P.2d 435, 437.

■ In the instant case the decree entered by Judge Guthrie had been in effect for a period of almost one year when Leitner filed his application for modification of the original decree. New facts and circumstances were put in issue by the parties. By stipulation the parties agreed to an adjustment of their rights fixed by the original decree. By so doing both parties invoked the jurisdiction of the court for their respective purposes. In our opinion, Judge Layman, as the presiding judge of the court, was vested with jurisdiction to try those new issues and quite properly exercised his authority in the premises in the absence of his being disqualified anew. As a result the modification decree signed by Judge Layman—in essence a consent decree—was valid and binding on the parties. In turn, the bond filed in the proceeding to assure performance of Mrs. Ewing's obligation to deliver up the children to Leitner in keeping with the modifi-

cation decree was likewise valid and enforceable.

The second principal question presented is Leitner's contention that the trial court erred in concluding that the condition of the decree requiring him to be "current" in his support payments was a condition precedent to be met by complete and exact performance and which he breached by failing on or before June 1, 1963, to pay support for "the first half of June, 1963." Leitner's grievance with the trial court's conclusion which resulted in the adverse judgment is twofold. It is argued (a) that the decree when properly construed created a concurrent condition, rather than a condition precedent, and (b) that even though the condition was a condition precedent, his failure to pay support on June 1, 1963, was not such a failure in performance as to warrant the action taken by the trial court.

We think it unnecessary to notice Leitner's argument concerning the label to be given the conditions. It is not particularly important. 3A, Corbin on Contracts, § 628, p. 14 (1960). For our purposes we will proceed on the basis that the trial court properly concluded that the condition was a condition precedent. Nevertheless we are inclined to agree with Leitner that under the facts and circumstances of this case the trial court did err in holding that he had forfeited his right to partial custody by failure to make a custody payment on June 1, 1963.

■ In the first instance, we have grave doubt that the trial court was warranted in holding that Leitner had not substantially performed in good faith the three conditions imposed upon him, which in most cases is sufficient to meet the harsh rule of complete and exact performance of a condition precedent. Pacific-Wyoming Oil Co. v. Carter Oil Co., 31 Wyo. 314, 226 P. 193, 198, rehearing denied 31 Wyo. 452, 228 P. 284. Leitner had paid all support payments shown to be due except support for George, Jr., from June 1, 1963, to June 8, 1963—the period fixed by the order of

Judge Ilsley—in the approximate sum of $12, and for Diana in the sum of $23; had fully complied with transportation arrangements for the children; had purchased a home in which to keep the children during his partial custody; and had arranged for experienced persons to watch over and care for the children during his "absence" from the home. Further than this Mrs. Ewing, by her agreement confirmed by the court, recognized that Leitner was a fit and proper person to have custody of the children. But we think we need not decide the question on that ground. We find that the court erred in holding that Leitner was in default of support payments at the time he was entitled to take custody.

Leitner's obligation with respect to support, as stated in the modification decree, was that he be "current" in his payments "subject to the original Decree" at the time he was to take custody. The original decree provided for monthly periodic payments to be paid on the first day of each month. It is quite evident that the trial court adhered strictly to the time fixed for payment by the literal language of the original decree and gave no credence to the word "current" as used in the modification decree. That should not have been done.

The word "current" is susceptible of more than one meaning. It must be considered in context with the subject matter with which it is associated. Generally it means a present, passing period, such as a month. Particularly this is true when applied to amounts due and owing because bills of account are usually presented at the beginning of the month and are expected to be paid within the month. Warren Co. v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 679, rehearing denied 136 F.2d 685; Graham v. Miller, 3 Cir., 137 F.2d 507, 509. See also Ballentine, Law Dictionary with Pronunciations (2d Ed.1948, 1954 Supp.). Clearly the term was used here in connection with periodic monthly support payments, and we cannot say as a matter of law that it did not bring ambiguity into the time that such payments were to be made. Conse-

quently, to determine the sense in which the word "current" was used, we look to the stipulation and the modification decree to discover, as nearly as possible, what the parties intended in the light of the circumstance existing when those instruments came into being.

■ A start is to keep in mind that the subject matter treats with the custody of children, a far-reaching, serious, and delicate matter. The goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children. Stirrett v. Stirrett, 35 Wyo. 206, 248 P. 1, 5; Henson v. Henson, Wyo., 384 P.2d 721, 723. Presumably the solemn agreement of the parents and the modification decree were to accomplish that primary purpose. All provisions are to be viewed in that light. It is also true that conditions precedent are not favored in matters of this kind. Owens v. Owens, 210 Cal.App.2d 705, 26 Cal.Rptr. 847, 849. In fact, many courts declare a provision such as we have here to be contrary to public policy. Howard v. Howard, Fla.App., 143 So.2d 502, 503, 504; Sweat v. Sweat, 238 Iowa 999, 29 N.W.2d 180, 185; Daly v. Daly, 39 N.J. Super. 117, 120 A.2d 510, 513; In re Dubin, 201 Misc. 621, 112 N.Y.S.2d 267, 272; Thurman v. Fatherree, Tex.Civ.App., 325 S.W. 2d 183, 186; Gibford v. Gibford, 55 Wash. 2d 760, 350 P.2d 158, 161. Even as a general rule conditions, if possible, are to be construed "so as not to operate as a forfeiture of the rights of parties." Pacific-Wyoming Oil Co. v. Carter Oil Co., supra. And, as we indicated in North American Uranium, Inc., v. Johnston, 77 Wyo. 332, 316 P.2d 325, 331, forfeiture for mere delay in the payment of money is the least favored of all.

■ In keeping with the foregoing, we are of the view that the modification decree is reasonably susceptible to the interpretation that Leitner had the entire month of June 1963 in which to make the June payment and such decree should have been so interpreted. The trial court's interpre-

tation was entirely too narrow and resulted in an injustice to Leitner's rights of partial custody. Neither does our construction do violence to defendants' favored position as gratuitous sureties. They participated in the proceeding that brought about the ambiguity. Consequently, Leitner was not in default on June 8, 1963, when he was entitled to the custody of George, Jr., and was not in default on June 14, 1963, when, at the latest, he was entitled to the custody of Diana.

The fact that the June payment was delayed until August 1963 is of no consequence. The important fact is that on June 14, 1963, Mrs. Ewing was without lawful excuse for failing to deliver the children to Leitner as provided in the decree. Her duty to perform on that day became absolute and she should not have been heard to complain of the delay in payment occasioned by her own willful and vengeful misconduct. Thatcher v. Darr, 27 Wyo. 452, 199 P. 938, 947, 16 A.L.R. 1442; Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674, 676. Furthermore, any amount due and remaining unpaid could readily have been recouped by resort to the powers of the court and the lien imposed upon Leitner's share of funds accruing from the contract of sale heretofore mentioned.

Our holding that Mrs. Ewing breached the performance provisions of the modification decree and that defendants were liable upon the bond necessitates consideration of the amount, if any, Leitner has shown himself entitled to recover. It is argued by defendants, under the doctrine of collateral estoppel, that Leitner can take nothing because recovery of his costs and expenses in connection with the habeas corpus proceeding in Hawaii was requested and denied by that court. The burden to establish this affirmative defense was on the defendants. All that is presented to us on the question is what appears to be a minute entry made by the clerk of such court relating that Leitner's lawyer took the stand and testified "on the matter of attorney's fees, costs and expenses" and that the court orally denied the request to recover the same. The nature and amount of the costs and expenses presented—other than attorney fees—do not appear. The judgment entered for Leitner makes no mention of such matters. Even assuming that the defense had merit, a matter which we do not decide, it would be sheer speculation on our part to say that all of the expenses incurred by Leitner in attempting to enforce his rights to custody were necessary, material, and primary facts within the issues adjudicated in the habeas corpus proceeding. It was defendants' task clearly to show such matters. Willis v. Willis, 48 Wyo. 403, 49 P.2d 670, 675, rehearing denied 49 Wyo. 296, 54 P.2d 814. In fact, defendants' attorney on oral argument conceded that Leitner had incurred expenses which, in any event, could not have been recouped in that proceeding.

Aside from attorney fees paid, Leitner introduced evidence in this case tending to show that he incurred personal expenses on his own behalf, recoverable under the bond, such as the 1200-mile automobile trip from Sheridan to Salt Lake City, Utah, and return; plane fare from Salt Lake City to San Francisco and return—$78; plane fare to Hawaii and return in August 1963—$318; hotel and meals for 12 days while there—$300; and other small miscellaneous expenditures. Such evidence was not controverted or seriously challenged. It can be seen that the expenses substantially exceed the amount of the bond. We have no statute which would permit recovery of such expenses as court costs, and in the absence of a showing that such expenses were recoverable in the habeas corpus proceeding in Hawaii we must presume to the contrary. We hold that the trial court erred in failing to enter judgment for Leitner for the full amount of the bond.

The judgment is reversed with instructions to the trial court to enter such judgment; Leitner to recover his costs.

Reversed.