# IN THE COURT OF APPEALS 3/25/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-CA-01020 COA

BEATRICE BARTON

APPELLANT

v.

EUGENE BARTON

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. DON GRIST

COURT FROM WHICH APPEALED: LEE COUNTY CHANCERY COURT

ATTORNEY FOR APPELLANT:

THOMAS ROY TROUT

ATTORNEY FOR APPELLEE:

GARY LEE CARNATHAN

NATURE OF THE CASE: SPECIAL JUDGE APPOINTMENT

TRIAL COURT DISPOSITION: CHANGE IN CUSTODY OF DAUGHTER TO FATHER

BEFORE THOMAS, P.J., COLEMAN, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

Beatrice Barton (Beatrice) and Gene Barton (Barton) were married and had two children. Beatrice and Barton were divorced on April 9, 1992. Because Barton was a practicing attorney in the First Chancery District, a special judge was appointed to hear the divorce, the Honorable Don Grist of the Eighteenth Chancery District. Under the divorce decree Beatrice received primary physical custody of their children.

After entry of the final judgment of divorce the parties took no legal actions in the matter until May 1995, when Beatrice filed a motion for contempt. Beatrice later dropped this motion. On June 2, 1995, Barton filed a motion to hold Beatrice in contempt for denying visitation. Barton styled the pleading a motion for writ of assistance. Judge Grist signed an order setting a hearing on the matter on June 14, 1995. Beatrice was given notice of this hearing on June 3, 1995.

At the hearing on June 14, 1995, Beatrice's attorney made two motions, one objecting to the court's jurisdiction and one for a continuance. Beatrice's counsel objected to the jurisdiction of the court arguing that the special appointment of Judge Grist was no longer valid. Judge Grist denied both motions and the case continued that day.

The only witness to testify was Barton, because Beatrice was not present to testify. The court gave temporary physical custody of the minor child, Maria, to Barton. A hearing on the final merits was set for August 2 and 3, 1995. At this date Beatrice did not proceed with any evidence, taking the position that the court did not have jurisdiction. The court entered an opinion and later a decree upholding the June 14, 1995, opinion granting Barton permanent physical custody of Maria. Aggrieved of the lower court's ruling Beatrice cites as error the following:

**I. THE COURT ERRED IN DENYING MRS. BARTONS' MOTION FOR CONTINUANCE.**


**II. THE COURT GRANTED RELIEF NOT PRAYED FOR IN THE PLEADINGS, DENYING MRS. BARTON AN OPPORTUNITY TO DEFEND AGAINST THAT RELIEF.**


**III. THE TRIAL COURT WRONGLY APPLIED SUPREME COURT AUTHORITY GOVERNING CHANGE OF PARENTAL CUSTODY.**


**IV. MR. BARTON FAILED TO CARRY HIS BURDEN OF GOING FORWARD WITH THE EVIDENCE AND ESTABLISHING A PRIMA FACIE CASE.**


**V. THE SPECIAL JUDGE WAS WITHOUT JURISDICTION TO HEAR THIS MATTER.**

# VI. THE SPECIAL JUDGE WAS NOT A DE FACTO OFFICER.

As the last issue is dispositive of this case, we will discuss only this issue. For clarity's sake, we will separate the last issue into subparts. Finding merit in Beatrice's assertion, we reverse and remand.

# VI.

## THE SPECIAL JUDGE WAS NOT A DE FACTO OFFICER.

### A. Was Special Judge, the Honorable Don Grist, a De Jure or De Facto Judge?

A judge who exercises the functions of a judicial office on a particular occasion may be a judge de jure, or a judge de facto. A judge de jure has been defined as "one who is exercising the office of a judge as a matter of right, and a judge de facto is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes." 48A C.J.S. *Judges* § 2 (1981). A judge de jure possesses the legal qualifications for the judicial office in question, he has been lawfully chosen to such office, and he has qualified himself to perform the duties of such office according to the mode prescribed by law. A judge de jure has a complete title to his office and his official acts are valid. *See In re Wingler*, 58 S.E.2d 372, 374 (N.C. 1950).

At the time of his initial appointment as a special judge to try the divorce case, Judge Grist was a de jure judge. What we must decide is whether he still was a de jure judge in 1995 when ruling on the contempt motion. Even if that status had been lost, his actions also need to be examined under the doctrine of de facto judges. Only if neither characterization fits Judge Grist's status in 1995 would his actions be improper.

Barton argues that a special judge appointed to hear a divorce case has continuing jurisdiction to hear petitions to modify that final judgment. We find no explicit language in the statutes nor in supreme court precedents. The special judge, Judge Grist, was appointed to hear the original divorce pursuant to Section 9-1-105, which provides for the appointment of a special judge to hear a case when the judges of a district are unable for any reason to hear the case. Miss. Code Ann. § 9-1-105 (1991). Sections 9-1-105(8) and (9) provide as follows:

> (8) The order appointing a person as a special judge pursuant to this section shall describe as specifically as possible the duration of the appointment.

> (9) A special judge appointed pursuant to this section shall take the oath of office, if necessary, and shall, for the duration of his appointment, enjoy the full power and authority of the office to which he is appointed.

The appointment order of November 22, 1991, permitted Judge Grist to handle "all motions, hearings, proceedings, and the final trial of the above styled case." That order suggests it is limited to that progression of steps which *terminate* with the "final trial." The argument that Judge Grist has authority over "all motions" should be read in the context that these are motions before the final trial.

Though less than explicit, the order itself authorized by Section 9-1-105(8), suggests Judge Grist's authority terminated at the divorce trial and any post-trial motions necessary to make that trial final.

Since the appointment order does not extend Judge Grist's authority beyond the proceedings that ended in 1992, we look to whether any general principles of the authority of special judges affects our analysis. The Mississippi Supreme Court has not discussed this question, but other jurisdictions have. In *Hays v. Hays*, 22 N.E.2d 971 (Ind. 1939), the regular trial judge disqualified himself on a motion and a special judge was appointed. *Id.* at 972. The special judge entered a final judgment of divorce and awarded the care and custody of the minor child to the wife. *Id.* After the divorce became final, the ex-wife and mother brought a contempt action against the father for failure to pay the child support ordered under the divorce judgment. *Id.* The father objected that the regular judge had no jurisdiction to hear the contempt action due to his earlier disqualification. *Id.* In overruling the objection the court reasoned:

> *[A] court trying a divorce case has a continuing jurisdiction over the children . . . . This does not mean that the particular judge who tries the case, merely by reason of having tried the case, has such continuing jurisdiction over the custody of the children.* The order entered by the special judge in the divorce action above mentioned was the order of the court and the violation of that order by the appellant constituted a contempt of the Jennings Circuit Court and not of the special judge who had made the order. *Only the regular presiding judge of that court, or some one duly authorized to act for him, could hear the contempt proceedings.*

*Id.* at 972 (citations omitted) (emphasis added).

In *Heller v. Heller*, 181 N.E.2d 530, 531 (Ind. Ct. App. 1962), a custody action was venued in another county. Subsequently, the mother filed a petition to modify the previous custody order and the father moved for a change of judge and a special judge was selected. *Id.* The special judge entered an order changing the custody. *Id.* Subsequent motions for changes of custody were filed by both parties and the parties "filed written objections to the competency and jurisdiction of said special judge on the grounds that the special judge had made a final decision in the previous custody hearing and by reason thereof his jurisdiction had ceased upon the entry of his final decree." *Id.* The special judge overruled the motions. *Id.* The Indiana Court of Appeals reversed stating that "upon entering a custody order . . . that particular issue before [the special judge] was finally decided thereby terminating his jurisdiction over subsequent petitions to modify his custody order." *Id.* at 533.

In *Leitner v. Lonabaugh*, 402 P.2d 713, 714-18 (Wyo. 1965), after the lower court granted a final divorce and a subsequent modification, the parties argued that the judge, after having been disqualified for the trial of the divorce case, was without authority to render a modification decree.

The court noted that the issue of a special judge's continuing jurisdiction would not ordinarily arise in most civil actions, since once a judge enters a final judgment the prospect of continuing litigation at the trial level in the same case is very unusual,

> [h]owever, that is not true of a divorce case involving "the care, custody and maintenance" of children or "other allowance for the wife." In such matters, under the statutes, jurisdiction of the court to amend or modify the provisions of the original decree

is retained and, as experience has shown, it is a jurisdiction often invoked. And that jurisdiction is an attribute of the court not to be confused with the acts of a disqualified judge.

. . . .

Assuming that the decree is not disturbed by the trial judge on post-motions or on appeal, it would seem to follow logically that when a special judge has rendered such a decree his function and authority in the case are at an end.

. . . .

Consequently, a modification proceeding involves new issues framed by facts differing from those existing when the original decree was entered. A new adjudication of the rights of the parties must be made. For all intents and purposes it is a separate and distinct case from the original proceeding. We conclude it should be so treated even though it is properly docketed in the divorce case.

*Id.* at 718-19 (citations omitted).

In *State ex rel.Cannon*, 237 N.E.2d 366, 366 (Ind. 1968), a special judge granted a final divorce and made certain orders regarding the parties' custody and support of their five minor children. After that, the defendant filed a motion with the same special judge to modify the final decree and the plaintiff moved to remand the cause to the regular judge, objecting to the assumption of jurisdiction of the special judge. *Id.* at 366-67. The special judge overruled the motion and the defendant presented evidence, but the plaintiff did not participate further in the action. *Id.* at 367. The special judge afterwards modified the final decree. *Id.* The Indiana Supreme Court stated: in a divorce action the court has continued jurisdiction in respect to minor children of the parties and may, in a proper proceeding, modify the decree as it pertains to custody and support, at any time during the dependency of the children, as the circumstances of the parents may require and in order to serve the interest and welfare of the children; but *it is the court that retains jurisdiction to modify its decree.*

. . . .

It follows, therefore, that the acting special judge in rendering after trial his decree . . . entered an appealable order, thereby terminating his jurisdiction over subsequent petitions to modify the custody order. . . . [T]he special judge had no jurisdiction over the subsequent petition in this case and consequently that entire proceeding before him was void.

*Id.* (emphasis added).

These cases conclude that the authority of a special judge ends when the divorce decree becomes final. We find the reasoning sound. While the court has continuing jurisdiction in such cases, the special judge does not.

Consequently, Judge Grist was not, as to this action, a de jure judge in 1995. In other words, at the time of the contempt hearing, Judge Grist was not exercising the office of Chancellor of the Lee County Chancery Court as a matter of right and thus was not a de jure judge. Where a judge is only acting under color of authority, his exercise of power is merely de facto, rather than de jure. In order for Grist's rulings on the contempt matter to have legal effect, we must consider whether Judge Grist was a de facto judge at the time of the contempt hearing. If he were a de facto judge, then his rulings will be upheld. However, if he were not even a de facto judge, then he had no authority to hear the matter.

The common law de facto officer doctrine is codified at Mississippi Code Annotated Section 25-1-37, which states in pertinent part:

> The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not . . . .

The doctrine of de facto officers, including de facto judges, exists in order to sustain the otherwise lawful orders of someone holding an office in the ordinary course of the government to which he or she claims to have been elected or appointed. The law cannot simply permit the technicality of the officer's later determined ineligibility to vitiate official acts where there is nothing invalid about such acts, save the subsequently determined fact that the officer who performed the act was not then a de jure officer. *Cooper v. Moore*, 44 Miss. 386 (1870). The justification for the de facto officers' doctrine rests on two primary presumptions: (1) that its non-application might render nugatory countless official acts and (2) that the State through its proper officers will remove any pretender to office whom in fact is asserting his authority without legal sanction. *Brady v. Howe*, 50 Miss. 607 (1874); *Cooper v. Moore*, 44 Miss. 386 (1870).

Beatrice argues that the special judge was not a de facto judge and his official acts lacked "color of title" and "color of authority." Barton argues that Judge Grist was a de facto judge and cites several Mississippi cases to support his proposition. *See Nelson v. State*, 626 So. 2d 121, 124 (Miss. 1993); *Herring v. Herring*, 571 So. 2d 239, 243 (Miss. 1990).

To be considered a de facto judge, there must be a regularly constituted office, and a vacancy therein. The office of special judge, authorized by statute, is a "regularly constituted office" for purposes of the de facto doctrine as shown in the following cases. In *Herring*, all three chancellors of Perry County recused themselves from hearing a divorce case and a special judge was appointed. 571 So. 2d at 241-43. The special chancellor under the recusal order had issued a fiat, a writ, and had entered an order rescheduling a hearing for a later date. *Id.* at 243. Subsequently one of the recused chancellors held a hearing on the matter. *Id.* The Mississippi Supreme Court held that absent "some valid order setting aside the [recusal order], the only person authorized to hear th[e] case was" the special chancellor. *Id.* The court held that even if some question could be raised about the validity of the special chancellor's appointment, an issue the court found unnecessary to resolve, the special chancellor was acting under "color of authority." *Id.* at 243.

In *Nelson*, two regular judges recused themselves from hearing the criminal case against the defendant because they had worked in the district attorney's office at the time the defendant had been

indicted. 626 So. 2d at 124. The judges made an agreement with a trial judge of a different district that he would handle the matter. *Id.* at 124. The judges were required to give notice to the Chief Justice of the Mississippi Supreme Court, of such an appointment; however, no notice was given. *Id.* On the day that the order appointing the special judge was filed, the special judge entered a dispositive order. *Id.* After the defendant was convicted, he challenged the conviction claiming that the special judge lacked jurisdiction because his appointment did not comply with Mississippi Code Annotated Section 9-1-3 (Supp. 1992). *Id.* The Mississippi Supreme Court disagreed and stated that the special judge was a de facto judge "who acts pursuant to the color of authority, though without legal authority, nevertheless performs valid acts." *Id.* at 125.

In this case, unlike the ones cited above, Judge Grist was not acting under "color of authority," or "color of title" in hearing the contempt matter in that the regular judges had not recused themselves from the matter. The only colorable authority he might have had was his 1991 appointment. We have concluded that this authority expired by its own terms and by the operation of law. Unlike *Nelson* and *Herring*, which have dealt with potentially irregular creation of authority that could not be collaterally attacked in a matter heard by that judge, the present case deals with the expiration of authority. The distinction is important. The case law is clear that it is for the State in a *quo warranto* proceeding, not a litigant in a private matter, to challenge the eligibility for office, the validity of an election, or other potential defect in a judge acquiring the color of authority that the judge holds. *State ex rel. Ernest Holmes v. Griffin*, 667 So. 2d 1319, 1323 (Miss. 1995).

Here, we are not asked to look behind the color of authority that an officer holds, but instead must define the terms of that authority, including its expiration date. A judge holding a four-year term who improperly holds over into a fifth year, not having been re-elected or appointed, is not a de facto judge. That is because the authority is no longer colorable. Similarly, once we hold that a special chancellor's authority terminates at the end of the original proceedings, even admittedly, if we had not previously made such a ruling in Mississippi, that is the end of the color of authority for that judge. In both *Herring* and *Nelson*, the special judges were acting at worst under some faulty appointment, where as in this case Judge Grist was not acting under any appointment.

While a vacancy in a judicial office can arise for the purposes of a single case because of recusal, Barton made no attempt to seek an order of recusal on his contempt petition. In the absence of such an order, there were legally serving judges holding de jure office in the First Chancery District.

**B. What Needs to Be Done to Invoke Mississippi Constitution Article 6, Section 165?**

Barton states that if this court finds that a special judge appointed to hear a particular case does not have continuing jurisdiction of the matter, this does not mean that Judge Grist's appointment ended. He argues that Judge Grist's appointment continued past the final divorce decree under Mississippi Constitution Article 6, Section 165. Section 165 gives two ways to replace a regular judge with a special judge: the parties can agree on a judge to preside over the case or the governor can appoint a special judge. There are two problems with this argument. First, it is evident that constitutional Section 165 was not used to appoint Judge Grist. What was used was the statutory authority of Section 9-1-105. Secondly, the question is not original appointment anyway, but the length of the appointment. Most of what we have already discussed is applicable here as well.

Barton argues that in this case the attorneys for both parties agreed that Judge Grist retain

jurisdiction. In his bench opinion delivering his divorce decision, Judge Grist stated, "I might add here that I agree with the two attorneys in this case that I will retain jurisdiction of this case. I don't usually put this on the record but I will this time."

The Mississippi Supreme Court has never interpreted Section 165 to say what is necessary to evidence counsel's agreement for a special judge to retain jurisdiction and we need not establish any hard and fast rules for future cases. We note that for Section 165 to apply, there must be a disqualification of the chancellor. Barton's argument basically is that the parties can agree to continue the appointment of a special chancellor well past the reasons for the disqualification of all elected chancellors. As to this particular case, and putting aside all other issues, we hold that Judge Grist's vague comment at the conclusion of the divorce action, absent some affirmative response or statement by counsel for both parties, without their client's agreement, is insufficient to invoke Section 165. This is more so true in view of Beatrice's new counsel's objection at the contempt hearing. Although a former counsel may bind his client in subsequent proceedings, even if new counsel protests, we have nothing before us to affirmatively show that Beatrice was aware of, or much less agreed to Judge Grist continuing to hear the case after the final decree of divorce. There is nothing in the record to support such a finding nor is there anything like a written stipulation or agreed order to confirm the matter.

For this case to proceed, a chancellor in the district or a special chancellor selected in an appropriate manner must hear this case. Accordingly, this case is reversed and remanded to the Lee County Chancery Court for a hearing consistent with this opinion.

**THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS REVERSED AND REMANDED. ALL COSTS ARE TAXED TO THE APPELLEE.**

**BRIDGES, C.J., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

**McMILLIN, P.J., NOT PARTICIPATING**.