**Paul Douglas SMALLWOOD, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 88–170.**

Supreme Court of Wyoming.

March 28, 1989.

Steven E. Weerts, Sr. Asst. Public Defender, Public Defender Program, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Stephen N. Goodrich, Legal Intern, Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Paul Douglas Smallwood seeks remand for resentencing before a different judge, claiming the sentencing judge erred in not granting appellant's disqualification motion and abused his discretion by allegedly considering dismissed sexual abuse charges in imposing sentence. This criminal appeal was previously before us in *Smallwood v. State*, 748 P.2d 1141 (Wyo. 1988) [*Smallwood I*], where we reversed the conviction and remanded to the district court because that court had erroneously accepted a guilty plea without advising the accused of the maximum possible penalty in contravention of W.R.Cr.P. 15(c).

On remand and following certain procedural activities, which we will describe in more detail below, the accused again entered a guilty plea to felony child abuse under W.S. 6–2–503 (June 1983 Repl.). The district court judge, who had sentenced him the first time to a term in the penitentiary of not less than four nor more than five years, again imposed an identical sentence. The district court judge gave him credit off both the minimum and maximum terms for the 565 days already served. The limit set by the legislature for incarceration upon violation of this section is not more than five years. W.S. 6–2–503 (June 1983 Repl.).

Appellant raises two issues on appeal:
1. The trial court abused its discretion in sentencing appellant to four to five years in the state penitentiary.[1]
2. The trial judge erred by refusing to recuse himself from appellant's case.

We affirm.

## FACTS

We incorporate by reference the facts stated in *Smallwood I;* the mandate on reversal there was filed on February 18, 1988.

On March 9, 1988, the district court set a pretrial conference for April 6, 1988. On March 18, 1988, appellant's counsel filed separate motions to dismiss all counts of the information which the state had earlier dismissed in connection with the guilty plea

which was the subject of *Smallwood I,* for a change of venue on grounds of pretrial publicity, and for change of judge. In the motion for change of judge, appellant's counsel sought peremptory disqualification under W.R.Cr.P. 23(d), or in the alternative, disqualification for cause under W.R.Cr.P. 23(e), supported by appellant's affidavit. On March 29, 1988, the district court set all of these motions for hearing for April 6, 1988, to coincide with the pretrial conference also set for that day.

On April 6, 1988, appellant, his counsel, and the county attorney appeared before the district court judge. The judge addressed appellant, saying the court had been informed by appellant's counsel that he wished to change his plea to a plea of guilty to the felony child abuse charge. Appellant confirmed this. At this point, the judge thoroughly informed appellant of the advice to a defendant as set out in W.R.Cr.P. 15(c). In response, appellant answered that he understood what the judge was telling him. Next the judge asked appellant if he understood that by pleading guilty he was giving up "all of those motions that you previously filed," to which appellant replied, "Yes, sir, I do." The judge then asked appellant if he understood he would be asked questions about the offense to which he was pleading guilty, and appellant would be required to answer those questions under oath under penalty for perjury. Appellant replied that he understood; the judge asked him whether he had "any questions for the court before I accept your change of plea," and appellant answered, "No, sir, I don't."

The judge asked several more questions to satisfy the requirements for a change of plea. Next, the judge listened to appellant's testimony about his having physically abused his daughter as charged and found that a factual basis existed for the guilty plea. The judge asked appellant if he would prefer to have sentencing delayed until the judge received reports from the penitentiary. Appellant's counsel stated

1. This issue was raised but not addressed on the first appeal.

that preference, and the court recessed the proceeding.

On May 12, 1988, the sentencing proceeding was held. After learning that appellant, his counsel, and the county attorney had each reviewed the penitentiary report, had no additions or corrections to be made to it, and had no additional evidence to offer, the judge heard the county attorney recommend the original sentence. Appellant's counsel recommended his client's release from prison and placement on probation. Appellant's counsel prefaced his recommendation with the observation, "The court knows what Mr. Smallwood was sentenced to because this court sentenced Mr. Smallwood." In his recommendation appellant's counsel asked the judge to consider only that his client had admitted striking his daughter with a belt and slapping his ex-wife's face, for which slapping he had already received a six-month sentence. Counsel emphatically urged the judge not to consider the criminal charges that the prosecution had dismissed, some of which involved alleged sexual child abuse. Counsel urged the judge to consider the penitentiary report which revealed that appellant had served his sentence quietly and without incident, and the mental health reports which concluded he was a physically non-violent person of borderline intelligence who could neither read nor write and showed no signs of being a pedophile.

After hearing counsel's recommendation, the judge asked appellant if he had anything he would like to say and if he knew of any reason why he should not be sentenced at that time. Appellant answered in the negative. In passing sentence, the judge stated he had considered:

1. probation;

2. the same reasoning and factors which he had previously considered in the original sentence;

3. the state penitentiary report which stated he had not attended counseling or therapy sessions and had not done anything to help rehabilitate himself in any way;

4. appellant had no probation plan; and

5. appellant had not demonstrated remorse and tended to minimize the gravity of the offense.

Since the judge considered and found present the same reasoning and factors which he had considered when he imposed the original sentence, we have carefully examined that reasoning and those factors for the purposes of this appeal. For that original sentencing the judge had before him the nine-page presentence report prepared by a probation officer, a report of a mental health examination prepared by Dr. Bernice B. Elkin, and a report of a psychological evaluation prepared by Dr. Jacques P. Herter. In addition, the judge heard appellant's testimony as developed by his counsel's direct examination at sentencing. Summarizing, we can relate the presentence report contained verbatim statements of appellant's ex-wife and daughter describing the specific incidents of physical abuse committed on them which formed the basis of the criminal charges to which appellant pleaded guilty; accounts of past abusive conduct by appellant directed toward his family members demonstrating an unmistakable pattern of abusive behavior; and accounts of alleged attempted sexual contact by appellant toward his daughter. In this presentence report, both his ex-wife and daughter expressed fear of appellant based on his past behavior.

Appellant was given ample opportunity to challenge the information contained in the presentence report. In his sentencing testimony, he denied the allegations of sexual contact with his daughter, admitted his ex-wife was afraid of him, admitted he had previously threatened his ex-wife, admitted spanking his children with a belt, admitted physically abusing his daughter by hitting her on the leg with a belt, and admitted slapping his wife's face. In passing the original sentence, the judge said he had considered:

1. Dr. Elkins' report;

2. the presentence report which indicated a history of abusive behavior by appellant;

3. probation and had found appellant's probation plans to be unrealistic;

4. Appellant had minimalized his role in this situation and had avoided accepting any responsibility for it; and

5. the gravity of the offenses and the vulnerability of children to be abused by their parents.

Against this factual background, we now consider appellant's two issues.

## DISQUALIFICATION OF JUDGE

■ With reference to his peremptory-disqualification-of-judge issue, appellant makes two assertions of interest. First, he claims that our reversal in *Smallwood I* essentially voided appellant's change of plea from not guilty to guilty, and therefore required a new arraignment for him to make a plea. Second, at oral argument appellant's counsel claimed that the new arraignment was held on April 6, 1988, in the proceeding in which appellant pleaded guilty and "gave up" all of the previously filed motions, including the motion for peremptory disqualification of the judge. Appellant reluctantly recognizes that his disqualification motion was filed before this new arraignment. He also concedes that W.R.Cr.P. 23(d) requires that this motion shall be filed "at the time of his arraignment and following his entry of his plea." The short irrefutable answer to appellant's issue is that not only was his motion not timely filed within the rule, he also abandoned it at the very time he was required to make it under the rule, since he claims the April 6 proceeding was his "new arraignment." We need not decide whether appellant's "new arraignment" theory is correct, or whether appellant was still being handled under his original arraignment in December, 1986. Under either scenario appellant's motion was not timely, and he abandoned the motion when he pleaded guilty on April 6, 1988.

We conclude, too, that appellant's motion for disqualification of the trial judge for cause was abandoned by appellant on April 6, 1988. Examining appellant's supporting affidavit, we found it deficient for failing to state sufficient facts to show the existence of prejudice on the part of the trial judge.

## ABUSE OF DISCRETION

With reference to appellant's abuse-of-discretion issue, we believe it initially instructive to identify what this issue is not about.

Appellant does not seek traditional proportionality review of his sentence under a claim that the sentence is inherently disproportionate as imposed for felony child abuse. Cf. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); and *Martin v. State*, 720 P.2d 894 (Wyo.1986). See also *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (eighth amendment of United States Constitution does not require a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases if so requested by the prisoner).

Although appellant superficially mentions he feels his sentence is too long or too harsh, he fails to develop any cogent issue, let alone argument, along these lines. Accordingly, we shall neither frame nor discuss any such issue or argument. See *Hennigan v. State*, 746 P.2d 360, 363 (Wyo. 1987).

What remains for our consideration under this abuse-of-discretion issue is appellant's assertion that he "was punished for failing to admit sex crimes against his daughter even though all sex charges were dismissed. If the court had not considered the sex charges, [appellant] would not have been sentenced to four to five years of hitting his daughter with a belt." Conceding that the sentencing judge did not make a specific ruling on the "sexual allegations," appellant, without any record evidence whatsoever, makes the unsupported accusation that, "It is logical to conclude that the trial court held the sexual allegations against appellant * * *."

■ Foregoing a careful and methodical step-by-step analysis, appellant simply makes a quantum leap past the substantial evidence in the record demonstrating the sentencing judge's basis for appellant's sentence. We have no disagreement with

appellant's statement of the law that the sentencing judge must give the convicted defendant an opportunity to rebut pre-sentence information which is materially false or which furnishes invalid premises for the sentence which the judge is imposing.[2] That principle helps to insure that the sentencing judge will not be unduly prejudiced by such information. *Griebel v. State*, 763 P.2d 475, 477 (Wyo.1988). However, the record clearly shows that the information before the sentencing judge regarding the sex charges had been disclosed to appellant, and he was given ample opportunity to respond. Appellant asks us to presume that, despite these procedural protections, the sentencing judge was unduly affected by irrelevant and prejudicial matters. Such a presumption is contrary to the law; appellant must establish that the sentencing judge in fact rested the sentence on false or improper premises. *Coletti v. State*, 769 P.2d 361, 362–363 (Wyo.1989).[3] Appellant has failed to establish that here. He apparently believes that his merely saying it is so will, magically, make it so. We dispel that belief.

Considering that appellant has made no effort on this issue to identify support in the record, and that the record in this regard amply supports the sentencing judge's exercise of discretion in imposing sentence, we need not, and do not, consider this issue further.

AFFIRMED.

URBIGKIT, J., filed a dissenting opinion, in which MACY, J., joins.

---

**2.** We have found interesting articles in Giorno, *Federal Criminal Sentencing: The Case for Evidentiary Standards*, 13 Loy.U.Chi.L.J., 875–916 (1982); and Note, *A Hidden Issue of sentencing: Burdens of Proof for Disputed Allegations in Presentence Reports*, 66 Geo.L.J. 1515–1549 (1978).

**3.** Cf. *Christy v. State*, 731 P.2d 1204, 1207–1208 (Wyo.1987), a second-degree sexual assault case where defendant claimed sentence was abuse of discretion because it was based on inappropriate presentence report information; this court, per Urbigkit, J., determined that "filed reports and information are evidence for the exercise of sentencing discretion, subject only to the rights of the convicted individual to deny, dispute or

URBIGKIT, Justice, dissenting, with whom MACY, J., joins.

It is incomprehensible to me that this case reappears on appeal in this posture. It is incomprehensible to me that the trial judge, faced with the request for disqualification, did not recuse himself, even if not mandatorily required to do so, which I question. Finally, it is incomprehensible to me that, faced with the trial court denial of disqualification, defense counsel did not file a writ of prohibition in this court and, if failing in that effort, go the route of a jury trial since the prior sentence and the probable succeeding sentence would proximate the maximum with which his client's liberty could be enjoined.

The penitentiary sentence, which was a "heavy hit" for the offense charged when the prior opinion was written, remains no less distasteful at this regurgitated juncture. The four-to-five year sentence pursuant to W.S. 6–2–503(a) is the maximum on the high side and only six months below the maximum on the minimum for a guilty plea derived from using a belt to punish Paul Douglas Smallwood's (Smallwood) teenage daughter.

Probably my most severe criticism of the majority's approval of an obvious enhanced sentence is engendered because Smallwood did not admit to and feel regret for an offense to which he would not confess as a dismissed charge. The thesis advanced is totally abhorrent to me that in order to obtain fairness and due process within our society's justice delivery system, Smallwood must admit and express contriteness for what he claims he did not do. If Small-

disprove." We affirmed the sentence, finding no abuse of discretion, even though the sentencing judge considered prior felony charges which had been apparently dismissed, as well as another sexual assault charge which was dismissed pursuant to the plea bargain resulting in the contested sentence. See also *MJP v. State*, 706 P.2d 1108, 1109–1110 (Wyo.1985), an indecent liberties case, in which we found no abuse of discretion where the sentencing court required submission of and considered for sentencing purposes evidence of the incest charges which the state had agreed not to file in exchange for a guilty plea. We found no infringement upon the convicted individual's right to due process.

wood had been more intelligent, his omission to buy favor with some accommodation might be less understandable and more censurable. Lacking the capacity to read and write and of intelligence of "the lowest level of normal" as accommodated by "comprehension [which] is too low for most written tests," he simply did not learn how to play the game properly.

Following remand for repleading as the result of this court's decision in *Smallwood v. State*, 748 P.2d 1141 (Wyo.1988), a motion for change of judge from the obviously biased predecessor was made by counsel, James M. Peck, of the office of the public defender.[1] The motion for change of judge stated:

> Comes now the Defendant and pursuant to W.R.Cr.P. Rule 32(d) moves for peremptory disqualification of the Honorable Timothy J. Judson from acting in this matter; or, in the alternative, pursuant to W.R.Cr.P. Rule 32(e) moves for disqualification for cause of the Honorable Timothy J. Judson from acting in this matter. The Defendant's motion for dis-

1. The attitude of the trial court toward Smallwood was documented in the pre-sentence investigation report and trial court analysis which resulted in the first four-to-five year sentence where the offense of striking his fifteen-year-old daughter with a belt was aggravated in analysis as a number nine grade important factor for the victim's vulnerability and particular cruelty, injury or threatened violence to others. Furthermore, the highest aggravating character was given to punishment of offender as necessary to deter others from committing the crime and the isolation of Smallwood. For whatever reason, the trial judge showed the most severe prejudice against Smallwood that was possible within the sentencing parameters for the offense charged.

Those sentencing criteria as completed by the trial court immediately before first sentencing in 1987 show:

**53. AGGRAVATING FACTORS:** Please indicate by circling the appropriate number the extent to which you viewed each of the aggravating factors as applicable, and the importance you ascribed to the factor(s) in selecting the sentence:

| | Not Applicable | Little Importance | | | | | | | Great Importance | |
|---|---|---|---|---|---|---|---|---|---|---|
| A. The offender was the leader of the criminal enterprise. | 0 | 1 | 2 | 3 | 4 | (5) | 6 | 7 | 8 | 9 |
| B. The victim was particularly vulnerable. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | (9) |
| C. The victim was treated with particular cruelty for which the individual offender should be held responsible. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | (9) |
| D. The offense involved injury or threatened violence to others and was committed to gratify the offender's desire for pleasure or excitement. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | (9) |
| E. The degree of bodily harm caused, attempted, or foreseen by the offender was substantially greater than average for the given crime. | 0 | 1 | 2 | 3 | 4 | 5 | (6) | 7 | 8 | 9 |
| F. Other: _____ (Please explain in Comments section.) | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |

**54. PURPOSE(S) OF SENTENCE(S) IMPOSED:** Please indicate the importance you have attached to each of the following sentencing aims when you selected the sentence:

| | Not Applicable | Little Importance | | | | | | | Great Importance | |
|---|---|---|---|---|---|---|---|---|---|---|
| A. The offender is in need of correctional treatment that can be provided most effectively by the sentence imposed. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | (8) | 9 |
| B. The offender deserves to be punished given the serious nature of the offense. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | (7) | 8 | 9 |
| C. There is undue risk that if a lesser sentence were imposed, the offender would continue to commit criminal offenses. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | (8) | 9 |
| D. The punishment of this offender is necessary to deter others from committing crime. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | (9) |
| E. The offender continues to commit crimes, even though other less restrictive sanctions have been frequently or recently applied. | 0 | 1 | 2 | 3 | 4 | (5) | 6 | 7 | 8 | 9 |
| F. The isolation of this offender is necessary for the protection of the public. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | (9) |
| G. Other: _____ (Please explain in Comments section.) | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |

qualification for cause is supported by the following affidavit.

The supporting affidavit then related:

Paul Douglas Smallwood, being first duly sworn upon his oath, states as follows:

1. I am the Defendant in the matter of the State of Wyoming vs. Paul Douglas Smallwood, Criminal File No. 936, Crook County, Wyoming.

2. On April 17, 1987, pursuant to a plea agreement, I pled guilty to one (1) count of felony child abuse in violation of W.S. § 6–2–503(a) and one (1) count of simple battery in violation of W.S. § 6–2–501, and the State dismissed the remaining three (3) counts charged in the Information herein. My pleas were entered before the Honorable Timothy J. Judson.

3. On June 17, 1987, the Honorable Timothy J. Judson sentenced me to not less than four (4) years nor more than five (5) years in the Wyoming State Penitentiary on the felony child abuse charge, and six (6) months in the Crook County Jail on the simple assault charge; the six (6) month jail sentence to run concurrently with the four (4) to five (5) year penitentiary sentence. The Honorable Timothy J. Judson did not advise me of the maximum possible penalties for the crimes to which I pled guilty.

4. I appealed my case to the Wyoming Supreme Court on the grounds that: (1) my guilty pleas were accepted in contravention of W.R.Cr.P. Rule 15(c); and (2) the Honorable Timothy J. Judson abused his discretion in sentencing me to the four (4) to five (5) year term in the penitentiary to run concurrent with the six (6) month jail term. The Supreme Court reversed and remanded my case based on the failure of the Honorable Timothy J. Judson to comply with W.R. Cr.P. Rule 15(c).

5. I believe and therefore state that the Honorable Timothy J. Judson is biased and prejudiced against me. My sentence on the felony child abuse charge was "... obviously a 'heavy hit', in sentencing parlance" as noted by the Supreme Court at footnote no. 1, *State vs. Smallwood,* 748 P.2d 1141, 1142 (Wyo. 1988). I feel that my sentence was the product of the Honorable Timothy J. Judson's belief that I *was guilty* of the three (3) dismissed charges as well as the charges to which I pled guilty, and he sentenced me accordingly. I fear that his preconceived belief that I am guilty of the two (2) charges to which I originally pled guilty, and also to the three (3) charges originally dismissed by the State, will bias, prejudice, influence and cloud the judgment of the Honorable Timothy J. Judson against me if he is allowed to act in my case. I do not believe that merely because my case is scheduled to be tried to a jury will protect me from a presiding judge who has already made up his mind that I am guilty. [Emphasis in original.]

This broadly premised, factually justified motion was denied in result by non-action of the judge and, for whatever presently unexplained reason without pursuit of additional methods to remove the judge, Smallwood again entered a plea of guilty. In support of the plea, at the change of plea session, Smallwood again admitted that he had struck his daughter with the belt. The trial judge, as expected, reasserted his opinion as to the efficacy of first sentence, and here we go again with another appeal.

I would attack the resolution of the majority on four clearly established principles: (1) Following prior reversal, the trial court should have, upon Smallwood's request, withdrawn by reassignment to a previously non-involved, non-prejudiced judge for plea or trial. (2) The mandatory disqualification criteria, W.R.Cr.P. 23(d), applies and the trial court lost jurisdiction. (3) Disqualification for cause pursuant to W.R.Cr.P. 23(e) applies, and with denial as a non-appealable order, that issue is properly presented for our review in present appeal without regard for the entry of the plea. (4) If it is concluded that the subject of non-jurisdictional disqualification for cause was waived by plea, then ineffectiveness of counsel is advertised unless persuasive evidence is furnished that Smallwood was told by his attorney that if he pled guilty again,

the same sentence would likely be entered against him.

Also infused in this case is the disqualification provision of the Wyoming Code of Judicial Conduct, Canon 3(C)(1)(a):

> A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to incidents where:
>
> (a) he has a personal bias or prejudice concerning a party * * *.

Smallwood was arrested October 20, 1986 for various charges, including the belt offense claimed by his daughter to have occurred August 17, 1986. *He has been in confinement since that date* by virtue of a level of established bonds commencing with $100,000 which, even after reversal of the first felony offense, has always been set at an amount above his capacity to secure release. This confinement without bondable release occurred as the result of Smallwood's use of a belt for his teenage daughter's punishment. That jail confinement totaled 570 days at the date of sentencing (actually erroneously computed by the prosecuting attorney of 565 days). This second sentence was actually more severe than if he had never appealed, since his opportunity to secure credit for good time or special good time between the periods of sentencing was lost. Unquestionably, the sentences on both first and second occasion were intended to be punitive. This individual of "diminished intellectual function" and "severe speech impediment" cannot understand what has happened to him for what he did. The more impressed he may become with the lack of justice, the more likely some untoward retributional action will hereafter occur when, with the inevitabilities of time and no matter how severe the sentence, he must ultimately be released from confinement of nearly five years for an offense of striking his daughter with a belt. All of this is true even though the initial psychological evaluation ordered by the trial court concluded:

> [H]e is not an individual who is prone to react with physical violence. There is no indication of a mental illness, and there is no indication of a proneness to abuse alcohol or other substances. I don't see this individual as being a danger to himself or to society.

That comment of May 22, 1987 by the psychiatrist predates nearly two years of incarceration for an offense essentially denied and a sentence of unquestionable severity. Time will tell what price society will have to pay, if any, in addition to the confinement cost and productivity loss for this individual as a pretty average guy who likes to and is willing to work and who tries to get by within his physiologically emburdened limitations of speech and intellectual capacity.

The Wyoming mandatory judicial disqualification process has an honored history as predating statehood when initially enacted by the territorial legislature in Wyo.Sess.Laws at 27 (1877).

> For perspective we need refer to the history of disqualifying judges in Wyoming. Since earliest territorial days, first by statute and later by rule, upon the mere filing of an affidavit without substantiation or hearing thereon, stating affiant's belief that on account of bias or prejudice of the presiding judge he could not obtain a fair trial, the judge has been required to make and enter an order calling in some other judge to preside.

*State ex rel. Johnston v. District Court of Platte County,* 495 P.2d 255, 255–56 (Wyo. 1972).

That initial 1877 statutory provision required:

> SEC. 5. The defendant in a criminal action may make an affidavit stating that he believes he cannot receive a fair trial owing to the bias or prejudice of the judge * * *.
>
> SEC. 6. When the objection in a criminal action is to the judge, he shall call some judge of the supreme court to try said action, who shall try or continue the cause as if it had been originally brought before him.

Wyo.Sess.Laws at 27 (1877).

This general statutory provision has apparently never been specifically repealed by the legislature. On March 10, 1983,

effective June 13, 1983, the peremptive rule which had superceded the statute at a somewhat earlier date was rescinded by the rule of the Supreme Court. Following near unanimous dismay by the Wyoming State Bar, the peremptive disqualification rules for civil and criminal trials were reinstated by rule of the Supreme Court in order dated August 9, 1984, effective October 31, 1984. See Proceedings of the Wyoming State Bar Convention, XIX Land & Water L.Rev. 321, 323 (1984). See also Comment, *Disqualification of District Judges in Wyoming: An Assessment of the Revised Rules*, XIX Land & Water L.Rev. 655 (1984). An earlier history of the Wyoming disqualification process was analyzed in detail in Comment, *Civil and Criminal Procedure—Disqualification of District Judges for Prejudice in Wyoming*, VI Land & Water L.Rev. 743 (1971). This history commends the continued intent from the provisions initially enacted in 1877 as territorial times in the diversity of the western frontier to continue the process as a concern for the fair and impartial trial judge.

This case is the first occasion for case examination since the present provision was most recently adopted by court rule as a present replacement for the right provided by the 1877 statute.[2]

In operational application, two questions are presented. Is a disqualification right provided after reversal and remand and, if so, when should the exercise occur? The majority actually answers neither of these questions in application of abandonment which cannot apply if the right was properly exercised. *Huhn v. Quinn*, 21 Wyo. 51, 128 P. 514 (1912). See also *Osborne v. District Court of Ninth Judicial Dist.*, 654 P.2d 124 (Wyo.1982) and *Washakie Livestock Loan Co. v. Meigh*, 47 Wyo. 161, 33 P.2d 922 (1934). With exercise of peremptory right, the trial court lost jurisdiction. Consequently, a further session could not be convened to do anything. See likewise *Fulsom v. State*, 573 S.W.2d 116 (Mo.App. 1978).

Conversely, on March 18, 1988, the motion for peremptory disqualification, W.R. Cr.P. 32(d), was filed, combined with a challenge for cause, W.R.Cr.P. 32(e). It was ignored by the trial court in peremptory character since a notice of setting was entered on March 29 for a hearing on April 6. If the disqualification action was sufficient when taken, no hearing was either required or appropriate in consonance of its automatic removal result.

All we can tell from the record is that on April 6, a hearing was convened, at which time a change of plea was accepted with a record that totally fails to establish why the peremptory challenge was not pursued before the change of plea discussion was conducted. Nothing occurred whereby either counsel or Smallwood himself directly indicated withdrawal or disassociation from the W.R.Cr.P. 32(d) and 32(e) disqualification challenges. Why all of this happened

---

**2.** The provision in text for criminal cases is disarmingly simple in initial appearance:

(d) *Peremptory disqualification.*—A district judge may be peremptorily disqualified from acting in a case by the filing of a motion requesting that he be so disqualified. The motion shall be filed by the state at the time the information or indictment is filed, designating the judge to be disqualified. The motion shall be filed by a defendant at the time of his arraignment and following the entry of his plea, designating the judge to be disqualified. In any matter, a party may exercise the peremptory disqualification only one (1) time and against only one (1) judge.

W.R.Cr.P. 23(d) (emphasis in original).

Additionally, the provision for disqualification for cause provides:

(e) *Disqualification for cause.*—Whenever the grounds for such motion become known, the state or the defendant may move for a change of district judge on the ground that the presiding judge is biased or prejudiced against the state, the prosecuting attorney, the defendant or his attorney. The motion shall be supported by an affidavit or affidavits of any person or persons stating sufficient facts to show the existence of such ground. Prior to a hearing on the motion any party may file counter-affidavits. The presiding judge shall rule on the motion, and if he grants the same shall immediately call in another district judge to try the action. A ruling on a motion for a change of district judge shall not be an appealable order, but the ruling shall be entered on the docket and made a part of the record, and may be assigned as error in an appeal of the case.

W.R.Cr.P. 23(e) (emphasis in original).

is also similarly unexplained in Smallwood's appellate brief.

Obviously, before the April 6 hearing, the W.R.Cr.P. 32(d) disqualification had been effectively denied since the experienced trial judge would have known that if the request was effective, he lacked continued jurisdiction to do anything except to reassign the case. *Huhn*, 128 P. 514. It is not so clear that the challenge for cause and the bias and prejudice component of ethical rule Canon 3(C)(1)(a) had similarly been determined.[3] Nothing in the record authenticates Smallwood's knowledgeable intent to waive objection to the trial judge since earlier reports related that Smallwood was "bitter against Judge Judson for the severity of this [initial] sentence." Out of this morass of a bad record and a worse majority opinion, premised on irrefutability, I am called to find argumentation without essence as an apparent attribution of waiver from non-discussed legal malpractice.

In its opinion, the majority needs to, and in lieu thereof I will, derive a rational application for the poorly texted provisions of the judicial disqualification provisions in W.R.Cr.P. 23(d). Clearly, by any functional application of the English language, the rule was not intended to confine filing *only* to time of arraignment and any time after plea (which could be until trial), but that it was to be filed by a designated date which means filed then or anytime before. If this court had intended a limitation to the time "immediately" after entry of a plea (of what), we could have and should have said so in the stated rule.

Consequently, applying some consistency to the civil judge peremptory disqualification rule, W.R.C.P. 40.1(b)(1), "at least fifteen (15) days before" is not different from a concept of on file "at the time of his arraignment" or immediately "following the entry of his plea." W.R.Cr.P. 23(d).

The more academically serious question which is considered in a substantial number of cases nationally is whether an initial peremptive disqualification right survives conviction and reversal to reoccur before retrial. Annotation, *Disqualification of Original Trial Judge to Sit on Retrial After Reversal or Mistrial; Federal Cases*, 22 A.L.R.Fed. 709 (1975); Annotation, *Disqualification of Original Trial Judge to Sit on Retrial After Reversal or Mistrial [State Courts]*, 60 A.L.R.3d 176 (1974). Nothing similar to the terminology of the Wyoming rule is found in any of the cases which consider the subject. Consequently, these cases lack precedential value for analytical assistance in interpretation of the curiously phrased Wyoming rule. Generally, however, the thrust of cases involving either rules or statutes in the modern jurisprudence move in the direction of an opportunity afforded the accused to avoid remarriage in the justice delivery system to the reversed first trial judge. The reason is obvious. It is founded in the corollary subject of second resentence punitiveness. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Cf. *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986).

In application of the modern trend for appearances of fairness and recognition of the psychology of retributional reaction, I would employ a reasoned approach to the language of this court as stated in the rule to find that in cases of re-arraignment and replea, the same rights for judicial disqualification reoccurs. *United States v. Holland*, 655 F.2d 44 (5th Cir.1981); *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358 (10th Cir.1977); *United States v. Bray*, 546 F.2d 851 (10th Cir.1976); *Peacock Records, Inc. v. Checker Records, Inc.*, 430 F.2d 85 (7th Cir.1970), cert. denied 401 U.S. 975, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971); *United States v. Bryan*, 393 F.2d 90 (2nd Cir.1968); *United States v. Drumm*, 329 F.2d 109 (1st Cir.1964). Cf. *United States v. Robin*, 553 F.2d 8 (2nd Cir.1977), establishing rules for presentation of the appearance of fairness

---

**3.** It would have been a process of exquisite simplicity for the subject of the disqualification to have been formally addressed during the plea change session so that at least Smallwood would have expressed a knowing decision on the recorded record. If he willingly concurred, it calls into question his functionality, as even the examination reported his "limited ability to conceptualize" and is "a man of borderline intelligence."

and contra *United States v. Del Piano*, 593 F.2d 539 (3rd Cir.), cert. denied 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). See general rule in Arizona as altered by the mistrial exception, *King v. Superior Court In and For Maricopa County*, 108 Ariz. 492, 502 P.2d 529 (1972). See also *Dillman v. Nelson*, 178 Kan. 672, 291 P.2d 428 (1955); *People v. Jackson*, 391 Mich. 323, 217 N.W.2d 22 (1974); and *Blomquist v. Clague*, 290 N.W.2d 235 (N.D.1980).

Having gone this far in dissent, it would not be necessary to address disqualification for cause, except that the majority supplants waiver with an insufficiency analysis to the disqualification for cause. I disagree that our history and precedent justifies this casual critique. *Pote v. State*, 733 P.2d 1018 (Wyo.1987); *Pote v. State*, 695 P.2d 617 (Wyo.1985); *Kobos By and Through Kobos v. Sugden*, 694 P.2d 110 (Wyo.1985); *Cline v. Sawyer*, 600 P.2d 725 (Wyo.1979). The unjustified statement in the nature of dictum at that point, as unsupported by factual substance in this record, is even more vehemently rejected for denial of a proper basis for disqualification when appropriateness was to be explicitly redemonstrated by the second sentence and its equal severity.

At least if I had been the trial judge, I would have understood contended bias and prejudice from the affidavit statement:

> I feel that my sentence was the product of the Honorable Timothy J. Judson's belief that I *was guilty* of the three (3) dismissed charges as well as the charges to which I pled guilty, and he sentenced me accordingly. I fear that his preconceived belief that I am guilty of the two (2) charges to which I originally pled guilty, and also to the three (3) charges originally dismissed by the State, will bias, prejudice, influence and cloud the judgment of the Honorable Timothy J. Judson against me if he is allowed to act in my case. I do not believe that merely because my case is scheduled to be tried to a jury will protect me from a presiding judge who has already made up his mind that I am guilty. [Emphasis in original.]

Even more expressively, the trial court's bias, prejudice and visceral antipathy toward Smallwood sweeps forth from his own analysis in the text of the Judicial Sentencing Information System presentence investigation form. Unfortunately, Smallwood would never have seen this information of June 27, 1987 before the replea session was convened on April 6, 1988. If he had, I doubt that he would have willingly placed himself before the same judge for second time felony sentencing.

Leaving aside mandatory disqualification and also challenge for cause, we are still faced with a remanded case where Smallwood has consistently asserted basic innocence and the result for the plea made is an augmented and extended sentence. Upon Smallwood's request for recusal, I find no qualified basis for disallowance of the request in consideration of our standards of judicial responsiveness. Wyoming has a sufficient number, all of them very good judges, so that the perception of fairness, propriety and justice should be preserved within the justice delivery system. I conscientiously believe that whenever a case is reversed and remanded for retrial, a simple request for change of trial judge by either or any party should be honored absent exigent and compelling trial related circumstances. *State v. Hartley*, 75 Conn. 104, 52 A. 615 (1902); *State v. Sullivan*, 486 S.W. 2d 474 (Mo.1972). The liberal early Wyoming history searching for the frontier fairness goal supports my perception of this character of justice. The persuasion of the United States Supreme Court is similarly authenticated in time and determined in certainty that a fair and impartial jurist is essential to justice. *Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). A fair trial in a fair tribunal is a basic requirement of due process. *In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). See also *Green v. State*, 21 Ark.App. 80, 729 S.W.2d 17 (1987) and *Adams v. State*, 269 Ark. 548, 601 S.W.2d 881 (1980), enforcing canon violation for disqualification.

I recognize that Wyoming has not adopted Canon 3(C) as a mandatory rule of disqualification as has been done for the federal judiciary. The difference is the enforceability of the appearance of impropriety standard. Comment, supra, XIX Land & Water L.Rev. at 671. However, a standard of conduct formally adopted should not be ignored in justice system operation since "justice must satisfy the appearance of justice." *Offutt*, 348 U.S. at 14, 75 S.Ct. at 13. Case law and law journal review of the bias and prejudice components of Canon 3(C)(1)(a) are extensive. See 9 Shepard's Professional and Judicial Conduct Citations (1988); Kilgarlin and Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 637 (1986); and Thode, *The Code of Judicial Conduct —The First Five Years in the Courts*, 1977 Utah L.Rev. 395 (1977). Cf. *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972); *Ex Parte Hill*, 508 So.2d 269 (Ala.Civ.App.1987), mandamus to deny recusal; *Forsmark v. State*, 349 N.W.2d 763 (Iowa 1984); *Wang v. Wang*, 393 N.W.2d 771 (S.D.1986); and Stempel, *Rehnquist, Recusal, and Reform*, 53 Brooklyn L.Rev. 589 (1987). Appellate jurists are not necessarily immune from responsibility for the appearance of justice either. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Johnson v. Sturdivant*, 295 Ark. 622, 758 S.W.2d 415 (1988); *Department of Revenue v. Golder*, 322 So.2d 1 (Fla.1975).

As Justice Marshall said in *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980):

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. * * * The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. * * * At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti–Fascist Committee v. McGrath*, 341 U.S. 123, 172 [71 S.Ct. 624, 649, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

In *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir.), reh'g denied sub nom. *City of Mobile, Alabama v. J.B. Converse & Company, Inc.*, 613 F.2d 314 (5th Cir.), cert. denied 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), the court stated:

> Clearly, the goal of the judicial disqualification statute is to foster the *appearance* of impartiality. * * * This overriding concern with appearances, which also pervades the Code of Judicial Conduct and the ABA Code of Professional Responsibility, stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence. As this court has noted, "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." *United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 107, 109 (5th Cir.1974). Any question of a judge's impartiality threatens the purity of the judicial process and its institutions. [Emphasis in original and footnote omitted.]

Appraised within another context, but exquisitely related, I follow Justice Frankfurter in search for "[t]he high social and moral values inherent in the procedural safeguard of a fair hearing * * *." *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 167, 71 S.Ct. 624, 95 L.Ed. 817 (1951). "Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done." Id. at 172, 71 S.Ct.

at 649. See *Killilea v. United States*, 287 F.2d 212 (1st Cir.), cert. denied 366 U.S. 969, 81 S.Ct. 1933, 6 L.Ed.2d 1259, reh'g denied 368 U.S. 872, 82 S.Ct. 64, 7 L.Ed.2d 73 (1961). In Comment, supra, XIX Land & Water L. Rev. at 671–72 (quoting from *United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 107, 109 (5th Cir. 1974)), the author summarizes:

The public's confidence in the integrity of the judicial system is an important part of this disqualification provision, and the appearance of impartiality standard is designed to bolster this confidence. *Appearance* is a key part of the entire concept. A judge should not inquire into his own introspective capacity to sit in fair and honest judgment, but should ask whether a reasonable member of the public at large, aware of all the facts, might fairly question his impartiality. Any indecision of the judge should be resolved in favor of disqualification. As one federal court noted, "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." [Emphasis in original and footnotes omitted.]

In *Huhn*, 128 P. 514, this court dispositively recognized that the peremptory challenge terminates jurisdiction except to call another judge to continue. This thesis pervades my perception of this case in the recognition that upon reversal and remand, an exercised opportunity and responsibility for a change of judge to one not previously involved is singular in essence within the Wyoming adjudicatory system of fairness and justice. See also *Osborne*, 654 P.2d 124; *Meyer v. Meyer*, 538 P.2d 293 (Wyo. 1975); *Barbour v. Barbour*, 518 P.2d 12 (Wyo.1974); *Rhoads v. Gilliland*, 514 P.2d 202 (Wyo.1973); *State ex rel. Petro v. District Court of Sheridan County*, 389 P.2d 921 (Wyo.1964); and *Washakie Livestock Loan Co.*, 47 Wyo. 161, 33 P.2d 922 (1934).

Cf. *Leitner v. Lonabaugh*, 402 P.2d 713 (Wyo.1965), where a divorce modification hearing was determined to be another proceeding for which a separate request for disqualification would be required.[4]

The majority marshals its major fuselage against Smallwood's assertions for his second time that this restated maximum sentence is unjustified. Contrary to those assertions, the record speaks for itself. The offense for which Smallwood was sentenced was striking his teenage daughter once, or at the most twice, with a belt without causing any significant physical injury. The punishment was a tad more severe, but not significantly more than the paddling episodes which customarily were pursued in public education in the Lander school system during my youth, although unquestionably without the anger impetus which demeans justification. Retribution of four-to-five years in the penitentiary for corporal punishment of a teenager could yet today achieve some interesting transfers in residencies for a singular number of parents and responsible authorities.

The fact of the matter is, if you look at the sentencing information, review the record and analyze the results, Smallwood got the near maximum sentence because he denied guilt, expressed surprise and dismay at the controversy from what he considered to be an insignificant event, and was charged with other offenses which were never proven by any character of viable evidence. Particularly damaging in second sentence was information furnished by order of the trial court and highlighted (by someone) in the trial court's record for clarity of recognition that he didn't attend alcoholic abuse programs because he denied that problem and failed to admit his guilt for the principal offense with which he was charged. Clearly, the second sentence was intentionally punitive for this reason as it was similarly punitive in pun-

4. The out of time cases surely are not applicable justification for the reversal and remand context of this proceeding. See *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986) and *Grubbs v. State*, 669 P.2d 929 (Wyo.1983). Cf. *State ex rel. Hopkinson v. District Court, Teton County*, 696 P.2d 54 (Wyo.), cert. denied 474 U.S. 865, 106 S.Ct.

187, 88 L.Ed.2d 155 (1985), although that case is an aberration in itself in the thesis of continued process from criminal trial to post-conviction relief petition hearing. Compare for the normal rule, *State v. Beam*, 766 P.2d 678, 680 (Idaho 1988), cert. denied — U.S. ——, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989).

ishing him for the temerity to have challenged the first plea and sentence by appeal. *Pearce*, 395 U.S. 711, 89 S.Ct. 2072. In rational recognition, the clearly established message of Smallwood II as now presented is that his limitation in basic intelligence denied him a proper understanding as to how better to get along with the system by playing the game, which realistically resulted in the term and severity of his present confinement. The total record that is available for exercise of judicial discretion cannot justify the sentence given to Paul Douglas Smallwood. *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir. 1988).

I would reverse and remand for resentencing before another judge.