**Dale Burton JONES, Petitioner,**

v.

**STATE of Wyoming, Respondent.**

**No. 92–62.**

Supreme Court of Wyoming.

June 11, 1992.

Michael J. Krampner, Casper, for petitioner.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., and Barbara L. Boyer, Sr. Asst. Atty. Gen., for respondent.

Before URBIGKIT, C.J., and THOMAS, CARDINE and GOLDEN, JJ.

## ORDER DENYING PETITION FOR WRIT OF CERTIORARI

Petitioner having filed a Petition for Writ of Certiorari to review a decision by the District Court, Fourth Judicial District, Sheridan County, Wyoming in the case entitled *State of Wyoming v. Dale Burton Jones,* Docket No. CR 20-7-87, and Respondent having filed a Response in Opposition to Petition for Writ of Certiorari and a Brief in Support of Response in Opposition to Petition for Writ of Certiorari, and the court, having reviewed the matter, finds there are insufficient grounds to grant the Petition for Writ of Certiorari, it is therefore

ORDERED that the Petition for Writ of Certiorari be, and it hereby is, denied.

URBIGKIT, C.J., would vote to grant the petition and files a dissenting opinion.

MACY, J., did not participate in the decision.

URBIGKIT, Chief Justice, dissenting to the Order Denying Petition for Writ of Certiorari.

I write in regret that this court, under the circumstances presented, now denies the Petition for Writ of Certiorari. This dissent is authored by a profound concern about one of three indispensable criteria of justice; the one here at issue being a fair, impartial and dispassionate trial judge to be added to the other two including a fair-minded jury willing to determine guilt only on trial evidence and competent trial counsel, prosecution and defense, to provide sustenance within the justice delivery system.

This is the *fourth* time this case has been before this court and, if the present pathway continues, we can probably look forward to a fifth and likely a sixth appearance before the decision regarding guilt is properly determined in compliance with constitutional, statutory, court rule and common law requirements to provide a fair and proper trial within a system of ordered justice.

It is recognized that the actual issue now presented is narrow and, even with disagreement, I can understand this court's present reluctance to go beyond that issue into the broader mine field clearly presented by the present circumstances illuminated by the reappearance of Dale Burton Jones as an appellate review concern. However, directly without harangue or delay, I would grant the Petition for Writ of Certiorari by an order appropriate to consider whether a change of trial judge is required. This court might as well resolve that issue in order to move on to progression of this case through a fair trial with guilt or innocence finitely and properly determined one way or another.

This current proceeding now presents for the *second* time petitioner's problems with a presiding judge of sufficient severity to require an application of counsel to this court's statutory and constitutional responsibilities well founded in judicial standards and provided by the Wyoming Code of Judicial Conduct, Canon 2, § A (footnote omitted):

A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

The issue now presented involves the right of a defendant to obtain a re-arraignment after prior conviction reversal to reconsider his or her status regarding a changed plea. Obviously, the real issue in this case at this time is Jones' right to a change of judge pursuant to the peremptory challenge provisions of W.R.Cr.P. 23(d) then in effect, now W.R.Cr.P. 21.1(a) effective March 24, 1992. Although I would examine when properly briefed and argued the broader issue of a right to a re-arraignment, either to be provided in case law

development, *cf. Smallwood v. State*, 771 P.2d 798 (Wyo.1989), or to adopt an amendatory rule, the concerns here presented touch a subject about which I harbor no question or confusion in applied philosophy. That subject is right to trial judge reassignment following first conviction reversal.

As it is now the practice in many courts of this nation, reassignment to another trial judge should be an absolute right of the defendant for retrial when requested following reversal of a first conviction. Life is too bumpy and minds of persons, including jurists, far too subject to retroactivity, while a fair trial is too important for our justice system to inadvisably require the defendant and more particularly his counsel to go through a retrial with the same trial judge after reversal of an earlier conviction for whatever substantive defect the first proceeding provided. This is a do it right, simple answer to a complex problem which will generally save both time and money in the operation of the justice delivery system while providing participant satisfaction with the system and assuring a heightened appearance of fairness.[1] *Smallwood*, 771 P.2d 798, Urbigkit, J., dissenting.

The history of this proceeding provides relevance and concern. Jones was convicted in 1988 of conspiracy to commit murder and received a life sentence. The first conviction in *Jones v. State*, 777 P.2d 54 (Wyo.1989) (*Jones I*) was reversed. For retrial, the appointed attorney who secured the first reversal then had trouble retaining his second trial appointment, *see Jones v. State*, 813 P.2d 629, 635 (Wyo.1991) (*Jones II*), Urbigkit, C.J., concurring in part and dissenting in part, and a filing of prohibition, mandamus and or certiorari re-

sulted in the reconsideration of Judge "A" who then assigned the case to the present judge "who lived completely across the state. This was certainly not a random assignment." *Id.* at 639, Urbigkit, C.J., concurring in part and dissenting in part.

This case was retried by Judge "B" when, following conviction and appeal, this court was faced with admitted, obvious, substantial and totally untrue perjury by a chief prosecution witness, a deputy sheriff, who manufactured testimony about being present in the federal court in Cheyenne, Wyoming when Jones entered his guilty plea and exercised allocution regarding the occurrence. The deputy sheriff witness, despite his testimony in *Jones II*, simply was not present at all. Hardly as a surprise, this court again reversed:

> It is undisputed that the detective's testimony was false. Although the State presented other evidence of Appellant's guilt, Appellant's federal court statement admitting that he had committed the crime was extremely incriminating. The district court's determination that sufficient evidence existed to convict Appellant absent the federal court statement invaded the province of the jury. It is for the jury rather than for the judge to decide whether a defendant is guilty beyond a reasonable doubt. *See Baum v. State*, 745 P.2d 877 (Wyo.1987); and *Stewart v. State*, 724 P.2d 439 (Wyo. 1986).
>
> We hold that under W.R.Cr.P. 34, which allows the district court to grant a new trial in the interest of justice, the district court abused its discretion when, after being confronted with uncontroverted evidence of the detective's false

---

1. This "choice" by the defendant may not be unblemished in additive risk. In times past, certainly long predating the assumption of judicial responsibility by this writer, there was a widely recognized idiom existent within some segments of the Wyoming trial judiciary regarding peremptive or for cause judicial disqualification and subsequent reassignment. By the trial bench, it was called and generally also known to the active trial practitioner by a generic name constituting the judge's response to a possibly perceived dilatory, harassing or unjustified trial litigants' efforts to judge shop. That common

expression defined very broadly the unpleasant surprise to await the requesting litigant and his attorney by the first judge's decision involved in reassignment to a particular judge—and the attitude of that judge thereafter about both counsel and his case. In current times, that proclivity or punishment once fairly prevalent seems to have generally disappeared, but certainly persons presently incarcerated were, in those earlier days, clearly subjected to this mutually understood syndrome of reactivity. If that attitude and intendment exists today, it can neither be justified nor excused. ·

testimony, it declined to grant Appellant's motion for a new trial.

*Jones,* 813 P.2d at 634–35.

After these two unsuccessful efforts at a proper conviction, a third trial, as a second retrial, is forthcoming and we now have this fourth filing in this court which is now presented as a Petition for Writ of Certiorari to seek a new arraignment.

The more recent history of this case is further illuminating. Jones is apparently still and certainly was recently serving a federal court sentence for the general events involved in this present state prosecution. The previous state authorities and the present trial judge are obviously not satisfied with the severity of the federal court sentence. However, considering that Jones was still incarcerated at federal expense in El Reno, Oklahoma and the continued cost was coming to weigh somewhat significantly on the local county treasury, the county attorney and defense counsel entered into a plea bargain which was submitted to the trial court for approval. Because of the significant distance, 355 miles each way, that Judge "B" would have to travel for a conference regarding acceptance of the proposed plea bargain, counsel jointly held a telephone conference with him on September 16, 1991.

Judge "B," as the sitting trial judge, was less than enthused about accepting the negotiated plea bargain settlement which involved the reduced charge of conspiracy to commit manslaughter and a term sentence concurrently with but longer than the five-year federal sentence. During the telephone conference, the prosecuting attorney was instructed by Judge "B" to write a letter "explaining the State's reasons for wanting the district court to accept this disposition." The county attorney completed a detailed two-page letter on September 20, 1991 with Judge "B" then responding on September 30, 1991 to advise of his rejection.

Abjuring a simple stated disinclination to approve for insufficient justification as a province of exercised discretion, the trial judge was more than explicit in his September 30, 1991 letter:

Mr. Jones has twice been convicted of conspiracy to commit first degree murder which convictions have twice been reversed by the querulous quintet for what seemed to me, in the face of overwhelming evidence of guilt, minor technicalities.

The third paragraph of the trial judge's letter amplified in visceral terms the trial judge's proclivity and predisposition regarding the case, which statement will not be quoted here since some future juror might by happenstance hereafter become unnecessarily exposed. May it suffice to characterize the comment as an authoritatively stated, absolutely determined opinion relative to the guilt of Jones.

Defense counsel, a specialist in criminal law and serving in this case as appointed counsel through the office of the State Public Defender, was now faced with the identical problem with which he had been faced in regard to Judge "A." Responding, he filed pre-third trial, a request for a new arraignment, challenge for cause, a motion for change of venue, two motions to suppress, a motion to require the custodian of Jones to present Jones for trial in civilian clothes and without restraints, discovery, in limine and, shortly thereafter, a motion for peremptory challenge of Judge "B."

Resolution by the trial court came by a decisive seven-page opinion letter denying explicitly all motions, including specifically peremptory challenge or recusal of the judge for cause as well as a new arraignment which would have afforded a more clearly established right to the peremptory judicial challenge. The trial judge overtly concluded that he was neither biased nor prejudiced against Jones or his counsel (but not so for what this writer had written in the *Smallwood* dissent). Consequently, lacking bias or prejudice or apparently opinion of guilt, neither a peremptory nor a challenge for cause was appropriate. The present trial judge then determined the peremptory challenge was untimely and repetitive and denial was mandated as a matter of law. Furthermore, he found the challenge for cause to be unjustified.

The court concludes that the defendant is not entitled to another "new arraignment", has exhausted his peremptory challenges and challenges for cause in both his earlier arraignments, and that his present motion for a new arraignment, with its concomitant peremptory challenge, should be, and they are hereby, denied.

I do not seek to extend this writing to prejudge what this court will have to face regarding any future biased and prejudiced judge issue if a retrial conviction results and a new appeal then follows as it most likely will. Rather now, I would grant the Petition for Writ of Certiorari at least to obtain briefing in my present recognition that what we cultivated in *Smallwood*, we now harvest for fourth, fifth or sixth Jones' proceedings in this court. Even though this proceeding is presented in the narrow context of re-arraignment after first conviction reversal, I would succinctly apply the responsibility imposed in Wyo. Const. art. 4, § 2 and by advance precaution grant the Petition for Writ of Certiorari to review trial judge recusal as a part of the necessity to secure a fair trial for Jones. Thus, Jones will be either properly convicted of something in the state court system or, if not, then acquitted of whatever possible charges may exist and then released when he finishes his federal sentence.

Consequently, I respectfully dissent.